# Richmond

### C. E. IRVINE V. EVERETT H. CARR, ADMINISTRATOR.

November 15, 1934.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Chinn, JJ.

The opinion states the case.

*J. Wesley Taylor* and *S. D. Timberlake, III,* for the plaintiff in error.

*Charles Curry* and *Gordon P. Peyton,* for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

This action by notice of motion was brought by Everett H. Carr, administrator of Marjorie E. Carr, deceased, an infant six years of age, against C. E. Irvine, to recover damages for the wrongful death of his intestate. There was a trial by a jury which resulted in a verdict for the plaintiff for $3,000, and judgment was accordingly entered thereon.

There are two assignments of error:

"That the court erred in permitting certain testimony to be introduced by the plaintiff; and

"In refusing to declare a mistrial because of misconduct by the plaintiff in stating to the jury that petitioner carried liability insurance."

These, in reality, constitute but one assignment of error and will be so considered.

The basis for the assignment of error is clearly set forth in the written opinion of the trial judge, the Honorable Joseph A. Glasgow as follows:

"The only claim made by counsel for the defendant in asking the court to set aside the verdict in this case is that

it came out in the evidence of the plaintiff that the defend-ant had told him that he had insurance.

"During the examination of the plaintiff as a witness he had testified at some length in regard to his knowledge of the facts connected with the killing of his infant daughter. During this examination he was asked as to any conversa-tion or conversations he might have had with the defend-ant, Mr. Irvine. He made demand of Mr. Irvine to know what he was going to do about this matter. He was asked if Mr. Irvine told him how the accident happened and was asked whether Mr. Irvine told him that the chlid ran out in front of him. He was asked whether Mr. Irvine offered to do anything for him. Objection was made to this line of questions by counsel for the defendant, but the court took the view that counsel was trying to ascertain from this witness whether Mr. Irvine made any inculpatory re-marks or admissions showing that he was guilty of negli-gence, and the court allowed these statements to be made. These demands were made upon the defendant right after the accident happened and under these circumstances he was asked whether the defendant had offered to do anything for him. The court admitted these questions, thinking, and with no other thought, that counsel for the plaintiff was seeking to see whether Mr. Irvine had made any state-ments tending to admit negligence on his part.

"The witness then said he took the number of Mr. Irvine's machine, and he was asked where he did that, and he said at the hospital door before he moved his car at the time he asked him what he was going to do.

"Counsel in interrogating this witness then seemed to change the subject and asked the witness:

" 'Did Mr. Irvine tell you his name?' and the witness an-swered:

" 'He gave his name as C. E. Irvine.'

"The witness was asked then:

" 'How do you know that man? How do you know that was his name?'

"The witness answered as follows:

" 'He told me on the front door steps. He said the insurance company would pay me—'

"Immediately upon this statement counsel for the plaintiff interrupted the witness with the statement:

" 'Stop, stop, that is not proper.'

"Immediately thereafter, counsel for the defendant moved the court to withdraw a juror and declare a mistrial.

"Thereupon the court gave this instruction to the jury:

" 'I will instruct the jury not to consider that statement. Gentlemen of the jury, you will give no consideration whatever to that statement from this witness. If it was brought out intentionally I would declare a mistrial in the case, but I instruct you most emphatically to give no consideration to that statement which was improper.'

"Counsel for the defendant still insisted upon their motion, and the court retired with the counsel to his chambers and there was some discussion as to what should be done under the circumstances above detailed."

After the conference with counsel the court was of opinion that the insurance feature was inadvertently injected into the case and proceeded with the trial.

In the principal case of *Rinehart & Dennis Co.* v. *Brown,* 137 Va. 670, 120 S. E. 269, 272, this court, in an opinion by Judge Burks, laid down the rule that when it appears in a personal injury case that the subject of casualty insurance was brought to the attention of the jury, not accidentally nor incidentally, but deliberately, not only once but several times, then a verdict for the plaintiff should be set aside and a new trial awarded.

In *Lanham* v. *Bond,* 157 Va. 167, 160 S. E. 89, 90, it appears that the court permitted counsel for plaintiff, in his opening statement, over the objection of defendant, to state that he intended to prove that defendant carried liability insurance. This also appears from the opinion:

"The plaintiff on direct examination testified that the defendant, at the time of the accident, said: 'I am very glad nobody is hurt, it is my fault but I have insurance on my car and the insurance company will pay all damages.'

"The defendant on cross-examination was asked this question: 'Did you not tell Mr. Bond immediately after the accident that it was your fault and that your car was covered with insurance and that the insurance company would pay all damages?'

"The witness replied: 'I did not admit that it was my fault, but I did say that there was no use having a police court case of it, and that if it was my fault I had an insurance policy and the insurance company would take care of it.'

"At each of the above junctures in the trial the defendant objected to the said questions and answers and moved that they be stricken out and renewed his motion for a mistrial, the court in each instance denying the motions."

In holding that a new trial should be awarded, Justice Browning said: "We adhere to the rule recognized and declared in the *Rinehart & Dennis Co.* v. *Brown Case, supra,* which is in accord with the great weight of authority."

■ In some jurisdictions it has been held that the mere mention of the fact to the jury that the defendant carries casualty insurance is sufficient to warrant the trial court in directing a mistrial. In our opinion this court is, by the provisions of section 6331 of the Code, inhibited from adopting such a rule. That section provides *inter alia* that no judgment shall be arrested or reversed "where it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached."

In construing that statute in *Standard Paint Co.* v. *E. K. Vietor & Co.*, 120 Va. 595, 91 S. E. 752, 757, Chief Justice Prentis said:

"Since the act of March 27, 1914, *supra,* it is apparent that this court should extend the doctrine of harmless error to its logical conclusion, namely, that error is harmless which does not injuriously affect the interests of the party complaining, and that such injury is not presumed but must affirmatively appear from the record; for that act, in simple and unambiguous language, directs the courts, at every

stage of the proceeding, to disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

In the *Rinehart & Dennis Case, supra,* that statute as above construed was invoked by the defendant in error. Judge Burks in his discussion of the effect of the *Standard Paint Co. Case, supra,* had this to say: "The opinion intended to go no further than the statute itself, which directs the courts 'at every stage of the proceeding, to disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.' Whether the statute changed the law theretofore existing or was simply declaratory thereof is a question about which different opinions have been entertained. But, whichever view may be correct, it has been the policy of this court for many years, and is still, to subordinate form to substance, and not to allow the substantial rights of parties to be taken away for the sake of adherence to any forms of procedure not essential to the orderly conduct of judicial proceeding. Our reports are filled with cases of harmless error. A plaintiff in error must always show, not only error in the rulings of the trial court, but error of a substantial nature; when once he has pointed out an error of a substantial character he is entitled to have it corrected, if it appears from the record that there is reasonable probability that it did him any harm. But our position is well sustained, not only by the New York cases, but by cases from other States, some of which we have cited.

"Since the decision in *Standard Paint Co.* v. *Vietor, supra,* the Code of 1919 has gone into effect, and it is provided by section 6331 that no judgment shall be reversed 'for any error committed on the trial where it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.' This goes the limit of harmless error, and was so intended, as appears from the note of the revisors attached to that section. It will be observed, however, that there is no presumption that an

error is harmless. This provision of the statute is only applicable where it plainly appears from the record that there has been a fair trial on the merits, and that substantial justice has been reached. If the record shows this, then the formal errors are to be ignored, and it is only when this condition plainly appears from the record that the statute is applicable."

It would seem, therefore, that the doctrine of harmless error has been deliberately engrafted upon our jurisprudence by the legislative enactment of section 6331.

We come now to a consideration of the case on its merits, as disclosed by the record, in order to determine whether or not the provisions of section 6331 apply. The case made by the defendant is as follows (opinion of trial court):

"He had come to Staunton to get some medicine for a sister-in-law who was suffering very much and was going back to his home which is situated on the road between Waynesboro and Stuart's Draft. He started out from Staunton on the Jefferson highway which leads to Waynesboro. As he neared a place known as Brands, he came upon a stretch of road which was straight for about 150 yards to the place where the accident happened. He stated he was driving his car at thirty-five miles an hour. He saw standing on the side of the road, at about the distance above mentioned, two small children. One of them was a little colored girl, ten years old, and standing with her was her little sister between six and seven years old. He kept on running his car at the same speed. After he had gone some little distance, this smallest girl started across the road and he saw her and she stopped in the middle of the road. The hard-surface of the road at this point was about twenty feet. She stopped in the middle of the road and looked up the road towards him. He said he thought she meant to stand there and let him pass her on the side of the road, and he kept on running at the same speed. When he got very close to her, she proceeded to go across the road and he made an effort to stop his car, but it was too late.

He ran over and killed her and his car ran some seventy feet beyond the point of contact."

The case as made out by the defendant is in direct conflict with that of the plaintiff, in several particulars.

Mabel Carr, the ten year old sister of Marjorie, when examined as a witness, stated that Marjorie did not stop in the middle of the road as the car approached but that when she was struck she had gotten across the road and was proceeding in the direction of their home.

It further appeared from the evidence of the witness Williams, an employee of the Chesapeake and Ohio Railway Company, that he witnessed the accident. His statement is that he first saw the two children when the car was a considerable distance from them. "They came down there and one of them ran across on to the side of the road I was on and the other one did not make it—stood over there and the one on this side started walking on down toward me and I stood there and the car came through the cement bridge and hit the child and knocked it down at the mail box right close to me."

In our opinion, however, the case does not turn on the question of a conflict of evidence. We are in accord with the view of the trial court that the evidence of the defendant, standing alone, is sufficient to warrant a verdict for the plaintiff. And further, if we take the same view of the case as the jury did, no other than a verdict for the plaintiff could have been rendered, under the ruling of this court in *Ball* v. *Witten*, 155 Va. 40, 154 S. E. 547, 549. In that case Justice Gregory said:

"Reasonable care required of automobile drivers toward children demands that the driver consider the age, maturity, and intelligence of the child. He must increase his exertions to avert injury to children. Children of tender years are entitled to a degree of care from others proportioned to their inability to foresee and avoid the perils which they may encounter. The driver must not assume that an infant only five years old will exercise proper care for its own protection; on the other hand, he is charged

with knowledge of the fact that a child of that age may be expected to act upon childish impulses, and he should take that fact into consideration and exercise the vigilance and precaution which the circumstances demand."

In our opinion the case at bar falls clearly within the provisions of section 6331, and the judgment of the lower court should be affirmed.

*Affirmed.*

EPES, J., dissenting.