# Richmond

DIDENA BOSTIC AND CARNIE ODELL BOSTIC, AN INFANT WHO SUES BY HIS NEXT FRIEND, DIDENA BOSTIC v. J. B. WHITED AND ROY REEDY.

June 18, 1956.

Record No. 4483.

Present, All the Justices.

The opinion states the case.

*Brantley B. Griffith* and *Erma Griffith Greenwood* (*A. T. Griffith*, on brief), for the plaintiffs in error.

*J. E. Duff*, for the defendants in error.

WHITTLE, J., delivered the opinion of the court.

The Bostics filed a motion for judgment against Whited and Reedy

seeking the recovery of $6,000 damages for the wrongful mining and removal of 810 tons of coal from their lands.

Defendant Reedy filed no responsive pleadings; however, defendant Whited, by leave of court, filed an answer, stating among other things that he had attempted to settle the claim with plaintiffs but they could not come to terms. He made no denial of the alleged trespass.

On the issue thus joined, after hearing the evidence and receiving the instructions of the court, the jury returned its verdict in favor of the plaintiffs in the sum of $1500. Upon motion of Whited the trial court, over the objection of plaintiffs, set aside the verdict and ordered a new trial. At the second trial the jury found a verdict in favor of plaintiffs for $2,430. This verdict, upon motion of Whited, and over the objection of plaintiffs, was set aside and a new trial ordered. Upon the third trial plaintiffs declined to offer proof in the case; whereupon the trial court, over plaintiffs' objection, entered judgment for defendants. In all instances the new trials were limited to the question of damages.

The plaintiffs assigned error to the court's setting aside both verdicts in their favor.

[■] Under these circumstances it is the practice of appellate courts to consider the record and to pass upon errors in the order committed, and to reverse the judgment of the trial court for material error not waived whereby the party appealing is aggrieved. This is done without looking into subsequent proceedings. *Jones* v. *Old Dominion Cotton Mills*, 82 Va. 140, 3 Am. St. Reports 92. Thus if it is discovered that the court erred in setting aside the verdict in the first trial either because of the mistaken belief that the verdict was contrary to the evidence or for some other supposed error committed, the appellate court will annul the proceedings subsequent to the first verdict and enter judgment on it. 1 M. J., Appeal and Error, § 282. pp. 714, 715; Burks Pleading and Practice, 4th Ed., § 427, pp. 834, 835; *Brann* v. *F. W. Woolworth Co.*, 181 Va. 213, 24 S. E. 2d 424.

Applying this rule of decision we are required to review the proceedings of the first trial.

[■] The record discloses that after the evidence was completed the court instructed the jury, at the instance of plaintiffs, that if it found from a preponderance of the evidence that the defendants "wilfully and wantonly" mined and removed plaintiffs' coal, or if it found from

a preponderance of the evidence that defendants were guilty of "gross negligence" in failing to make an effort to determine the location of the division line, then the jury should fix the plaintiffs' damages for coal improperly mined in an amount equal to the selling price of the coal at "the driftmouth of the mine".

And at the request of defendant Whited the court instructed the jury that if it believed from a preponderance of the evidence that defendants Whited and Reedy mined and removed coal owned by plaintiffs, but that the mining and removal of said coal was inadvertent or done through mistake without "gross negligence" upon the part of defendants and without any intention on their part to mine and remove any coal belonging to plaintiffs then in that event defendants "are liable only for the value of the coal in ground before it is removed, or for the royalty".

No error was assigned by defendants to the action of the court in granting plaintiffs' requested instruction which was more or less the converse of the instruction requested by them. There being no assignment of error directed to the giving of the instructions, they became the law of the case and are binding upon us irrespective of their correctness. *Acme Markets* v. *Remschel,* 181 Va. 171, 24 S. E. 2d 430; *Ross* v. *Schneider,* 181 Va. 931, 27 S. E. 2d 154.

Every trespass is *prima facie* wilful, and where a trespass is conceded, as in the instant case, the burden of proof is on defendants to show that the trespass is not wilful. *Wood* v. *Weaver,* 121 Va. 250, 260, 92 S. E. 1001; *French* v. *Stange Mining Co.,* 133 Va. 602, 114 S. E. 121; 18 M. J., Trespass, § 19, p. 564.

If the jury believed in the instant case, as stated in defendants' requested instruction, that the "mining and removing of said coal was inadvertent, or done through mistake, without gross negligence", then under the law of the case the defendants would only be liable for the value of the coal in the ground before it was removed. But under plaintiffs' instruction, if the jury believed that defendants were guilty of "gross negligence" in committing the trespass, then the value of the coal should be measured by its selling price "at the driftmouth of the mine".[1]

The record disclosed that plaintiffs were the owners in fee of 65 acres of coal lands and that defendant J. B. Whited and one C. C.

---

[1] For a statement as to the measure of damages, proof, etc., see *Mullins* v. *Clinchfield Coal Corp.,* 227 F. 2d 881 (4th Cir., 1955); Vol. 42, No. 3 (April, 1956) Virginia Law Review, page 439, *et seq.,* and cases there cited.

Compton were the owners of a seam of coal located upon an adjoining 9.7 acre tract; that Whited and Compton had mined and removed coal from their land over a period of two years, that thereafter Whited approached one Hobart Bostic, an experienced miner, and requested that he join him in the mining and removal of coal from the 9.7 acre tract. Bostic expressed fear of the result which might follow without the making of a survey to determine the property lines. Whereupon, Whited engaged the services of defendant Reedy as a partner for the mining of the coal. The record disclosed that they undertook the new mining operation without any map or survey having been made of excavations or property lines, in violation of § 45-10, Virginia Code, 1950.[2]

According to the evidence of Whited and Reedy, Reedy was instructed by Whited to continue the mining of coal and to drive his entries and rooms as C. C. Compton should direct. The evidence disclosed that Compton directed Reedy, "you can bear to the right a little but stay in good coal."

After defendants had removed coal without a map or survey for a period of more than a month, plaintiffs procured a competent engineer to make a survey of the excavations and property lines of the adjoining land. The survey disclosed that approximately 810 tons of coal had been mined and removed from an area of plaintiffs' lands. The evidence further disclosed that coal was bringing $6 per ton at the driftmouth of the mine.

Whited admitted that the coal had been mined without any map or survey and that he had been warned by W. H. VanDyke, a surveyor, against the advisability of continuing the operations without a proper map. Further, Hobart Bostic stated that Whited agreed, when he attempted to engage him as a partner in the mining operations, that he [Whited] would be personally responsible for anything that happened if they mined on plaintiffs' property.

Defendant Reedy testified that C. C. Compton, who was directing the mining operations, told him, "you can bear a little to the right, but you stay in good coal, and I mean stay in good coal." These directions were given Reedy by Compton after they had been warned that the operations were extending beyond their property.

This evidence was sufficient for the jury to determine that the defendants were guilty of "gross negligence" in failing to make an

[2] Amended, Acts of Assembly, 1954, Ch. 191, p. 181; amendment not here pertinent.

effort to determine the location of the division line. This question, and the amount of damages sustained, under the unchallenged instructions, became factual questions to be determined by the jury.

The verdict for $1500 found by the jury in the first trial is reinstated and judgment is now entered thereon against the defendants and in favor of the plaintiffs. All proceedings subsequent to that verdict are annulled. *Brann* v. *F. W. Woolworth Co., supra*, 181 Va., at p. 224.

*Reversed and final judgment.*