## Richmond

RAYE HOLT SIMMONS v. BERNARD BOYD.

March 10, 1958.

Record No. 4734.

Present, All the Justices.

The opinion states the case.

*Frank L. McKinney* (*Henry W. McLaughlin, Jr.*, on brief), for the plaintiff in error.

*John W. Carter* (*Carter & Carter*, on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

Raye Holt Simmons, who was Raye L. Holt at the time this action was instituted and at the time of the first trial, filed her motion for judgment against Bernard Boyd. She was a guest passenger in an automobile operated by Paul Simmons, whom she later married, which collided with a vehicle driven by Boyd. The trial resulted in a verdict for $20,000. Over objection of plaintiff, the court sustained defendant's motion to set aside the verdict and awarded a new trial on all issues. At the second jury trial plaintiff was awarded the sum of $6,500. Motions of plaintiff and defendant to set aside that verdict were overruled and final judgment was entered thereon. Plaintiff, by this appeal, seeks to have the judgment reversed and the verdict of the first trial reinstated.

The accident occurred on November 4, 1955, between 5:10 P.M. and 5:30 P. M. on Route 659 about 8 miles west of South Boston. The road runs east and west, is black top and has no center markings. It is straight and was dry at the time. The hard surface is approximately 17 feet wide and there are dirt shoulders about 3 feet wide.

Paul Simmons was operating a 1941 Ford tudor sedan proceeding west, and defendant was operating a 1942 Dodge pickup truck traveling east. Simmons said that as he passed over a slight rise in the road he noticed Lorenzo Caldwell leading a cow along the north shoulder about 75 feet from him. Simmons turned his vehicle slightly to his left, possibly a little beyond the center of the highway, to

safely pass. As he passed and was in the act of turning back to the right, or north, side he observed defendant's truck approaching. The truck began to skid and headed towards him. Simmons continued to bear to his right and proceeded towards the field. The two vehicles collided on the north shoulder of the highway. The Simmons car skidded approximately 45 feet before the impact. All of its tire marks were to Simmons' right of the center of the road. Defendant's truck laid down skid marks of about 51 feet. Defendant stated he saw there was going to be a head-on collision so he applied his brakes and his left front wheel locked which "pulled" him across the road into the westbound portion thereof.

Plaintiff, riding in the front seat of the Simmons car, was thrown against the dashboard and her head struck the windshield. She was taken to a hospital for treatment of the injuries she sustained.

Plaintiff's assignment of error is that the trial court erred in setting aside the verdict for $20,000 rendered at the first trial and in granting a new trial.

Among cross errors assigned by defendant are the following:

The court erred (1) in making a part of the record two letters, dated June 21 and 27, 1956, which it addressed to counsel in regard to setting aside the verdict; (2) in allowing the introduction of evidence from the World Almanac as to the hour of sunset at the longitude and latitude of Washington, D. C., and (3) in permitting an automobile mechanic to qualify as an expert witness and testify as to the reactions of a motor vehicle with defective brakes.

The pertinent parts of the court's letter dated June 21, 1956, follow:

"After careful consideration it is my opinion that the verdict in the caption case should be set aside and a new trial granted.

"The extent of Mrs. Holt's injury, the amount of the jury's verdict, the short time the jury was considering their verdict, suggests that the jury may have been influenced by the mention of insurance in the case.

"I do not believe any of the other errors mentioned by the defendant are prejudicial, if there be other errors."

In response to a letter from plaintiff's counsel requesting the specific grounds upon which the verdict was set aside, the court by letter, dated June 27, 1956, stated in part:

"Since the caption suit is still pending and is to be tried anew I do

not believe it proper for me to bind myself further than I did in my letter of the 21st. The new trial is granted on all issues.

"All the order at this time needs to state is: On motion of the defendant, and for reasons satisfactory to the court, the verdict of the jury is set aside and a new trial granted on all issues. To which action of the court plaintiff excepts."

What is said in *Bostic* v. *Whited*, 198 Va. 237, 238, 93 S. E. 2d 334, is applicable to the instant case:

"Under these circumstances it is the practice of appellate courts to consider the record and to pass upon errors in the order committed, and to reverse the judgment of the trial court for material error not waived whereby the party appealing is aggrieved. This is done without looking into subsequent proceedings. *Jones* v. *Old Dominion Cotton Mills*, 82 Va. 140, 3 Am. St. Reports 92. Thus if it is discovered that the court erred in setting aside the verdict in the first trial either because of the mistaken belief that the verdict was contrary to the evidence or for some other supposed error committed, the appellate court will annul the proceedings subsequent to the first verdict and enter judgment on it. 1 M. J., Appeal and Error, § 282, pp. 714, 715; Burks Pleading and Practice, 4th Ed., § 427, pp. 834, 835; *Brann* v. *F. W. Woolworth Co.*, 181 Va. 213, 24 S. E. 2d 424." *Judge* v. *Burton*, 198 Va. 664, 666, 96 S. E. 2d 120. We turn therefore to a consideration of the evidence and rulings at the first trial.

Plaintiff had been referred for examination by her physician, Dr. N. M. Ewell, Jr., to Dr. Walter O. Klingman, head of the Department of Neurology and professor of Neurology and Psychiatry at the University of Virginia Medical School. Dr. Klingman testified that he examined plaintiff on December 23, 1955, and found she had an oscillation of the eyeball from side to side coupled with a rotary element, which is commonly called nystagmus. He stated these movements of the eyeball are abnormal, automatic and not under voluntary control. His examination further revealed that she had a slight disturbance of her equilibrium and she could not perform certain standard tests considered to be normal. She had a tendency to fall and sway towards one side, which was intensified when she stood on one foot and then on the other. He further testified:

"Q. What is the relation you can give to this injury and me of this very unusual eye condition and her feeling of falling backwards or loss of equilibrium?

"A. Well, in anyone who presents a history where there has been

a head injury sufficient to cause a disturbance of conscious ss or unconsciousness and then notes from that time on or within a relatively short period of time symptoms of this character and where these findings are then made we consider that as being evidence that there has been some disturbance in the function of this particular mechanism in the mid brain that normally should not exist and my association was with the story of having had a head injury and not being able to define anything from her past history that she had been suffering from any similar complaints prior to the accident."

While he considered plaintiff's injury to be mild or moderate, he could not state, and did not think anyone could, whether her condition would be permanent. In general, he said, these injuries tend to disappear and become less pronounced between six and twelve months after injury, but "there is no way of predicting whether it will be maintained as a permanent defect." He also said the longer the condition persists the possibility is greater that it may persist permanently. He stated he would not advise plaintiff to operate an assembler machine, which she was accustomed to operating in the shoe factory where she had been employed.

Dr. Richard H. Ames, a neurosurgeon in Greensboro, North Carolina, who examined plaintiff on March 9, 1956, testified on behalf of defendant. His positive findings were identical with those found by Dr. Klingman in his examination on December 23, 1955. He said he was unable to find objective evidence of organic after effects of her injury which would cause appreciable disability, and he indicated such objective abnormalities were probably of long duration. He was asked on cross examination:

"Q. And that Mrs. Holt has no way to normally expect she will get any better because of the fact that they were a constant condition from December to March?

"A. Speaking again purely from the findings that is probably correct."

Erna Shotwell, plaintiff's school teacher, who had known plaintiff most of her life, stated that she was one of the most active and healthy girls in school.

Jesse Norton Glenn, plaintiff's employer said he had not noticed any indication of her suffering from dizziness or unsteadiness on her feet prior to the accident.

Plaintiff testified that sometimes when she arose from a seated position she had to steady herself by holding on to the chair; that fre-

quently when she saw an object passing she became nauseated and had a sensation of falling forward; that she had severe headaches; that she had a sensation of falling backwards on an average of once every two or three days and that she had sleepless nights. She further testified that she did not have any sensation of dizziness and was a healthy person before the accident and that her honest opinion was her condition, if anything, had become progressively worse.

Mrs. Hallie Simmons said plaintiff had been living with her for approximately two years and that prior to the accident her health was that of a normal person. She corroborated plaintiff's testimony about her condition subsequent to the accident.

In *Colonna Shipyard* v. *Dunn*, 151 Va. 740, 766, 145 S. E. 342, it is said: "The settled rule is that as there is no legal measure of damages in cases involving personal injuries the verdict of the jury in such cases cannot be set aside as excessive unless it is made to appear that the jury has been actuated by prejudice, partiality or corruption, or that they have been misled by some mistaken view of the merits of the case." See *Natl. Fruit Product Co.* v. *Wagner*, 185 Va. 38, 40, 37 S. E. 2d 757.

It is true that sometimes the size of the verdict may indicate that the jury was actuated by passion or prejudice. In ascertaining whether a verdict is excessive each case must be decided on its particular facts. *C. D. Kenny Company* v. *Solomon*, 158 Va. 25, 30, 163 S. E. 97.

Plaintiff was thirty-two years of age at the time of the accident. She had been employed in a shoe factory as an assembler for more than five years and at the time of her injury was earning $37.50 a week. As of March 30, 1956, the date of trial, her loss in wages amounted to $730, and the evidence shows she could not return to the work she was accustomed to as long as her condition persists. Hospital, doctors' and drug bills incurred amounted to approximately $455. Her knees were cut and are disfigured by scars. She has severe headaches and has spent sleepless nights. The doctors were unable to say that she will recover from nystagmus and dizziness, and plaintiff said her condition is progressively worse. If this condition is to continue permanently or for any appreciable length of time, most assuredly she is entitled to sizeable compensation for her injuries.

Under these circumstances, can we say the jury award of $20,000 is excessive? It may be that the verdict is large and more than we

ourselves would have awarded her, yet our judgment is not to be substituted for that of the jury. Unless it is so manifestly disproportionate to the injury as to shock the conscience of the court, the verdict should not be disturbed. *Aronovitch* v. *Ayres,* 169 Va. 308, 326, 327, 193 S. E. 524. We do not find that to be the case here.

This brings us to the question whether the jury in rendering their verdict was motivated by bias or prejudice or were misled by some mistaken view of the merits of the case.

Dr. Klingman was asked by counsel for defendant whether Dr. Ewell wanted her to see him from time to time and he responded he would have to look at Dr. Ewell's letter. He said there was no request for treatment and proceeded to read a part of the letter: "Did well in the hospital. At the time of discharge had no headache, visual disturbance, etc. She was seen several times later * * *. This is an insurance case and although I am unable to find any real difficulty I would appreciate you seeing her in consultation." After asking several additional questions, counsel for plaintiff questioned the witness:

"Q. The question Mr. Carter asked you as to what Dr. Ewell had requested of you in the manner of a report caused you to refer to his notes and his letter; is that correct?

"A. Yes, sir."

At this point the jury were sent to their room and counsel for defendant moved for a mistrial on the ground that defendant had been prejudiced by the mention of this being an insurance case and the fact that counsel for plaintiff had attempted to make capital of it by reminding the jury of the letter. The court in overruling the motion stated: "I don't think it was prejudicial as far as the jury is concerned. I don't think they were paying any attention to what he said. Would you like the jury instructed about it?" Counsel for defendant did not request that the jury be instructed but excepted to the court's ruling.

It is well settled that evidence showing a defendant is insured against accident is irrelevant and inadmissible in an action against him for negligent injury. *Rinehart & Dennis Co.* v. *Brown,* 137 Va. 670, 675, 120 S. E. 269. Some jurisdictions hold that if the jury is informed that defendant carries casualty insurance it is sufficient to warrant the trial court in directing a mistrial. This hard and fast rule is not followed in our jurisdiction for § 8-487, Code 1950, provides, among other things, that no judgment or decree shall be arrested or reversed "* * * for any error committed on the trial when it plainly appears from the record and the evidence given at the trial that the

parties have had a fair trial on the merits and substantial justice has been reached." *Irvine* v. *Carr*, 163 Va. 662, 667, 177 S. E. 208.

In *Kiser* v. *Suthard*, 162 Va. 456, 174 S. E. 682, a witness testified on cross examination that photographs had been taken of marks on the road. Plaintiff's counsel intervened and asked the witness who made them, and his reply was two persons representing the insurance agent. Counsel for defendant moved for a mistrial because of the reference made to insurance. The trial court overruled the motion and stated it would instruct the jury that it made no difference whether either party had or did not have insurance. When the jury returned, the court did not instruct the jury on this point, and at the conclusion of the evidence counsel for defendant did not request that an instruction be given in reference to this testimony. We held that the trial court did not err in refusing to declare a mistrial or in refusing to set aside the verdict.

In *Bourne* v. *Barlar*, 17 Tenn. App. 375, 379, 67 S. W. 2d 751, the court had this to say: "We think all these statements about insurance were improper, but did they or were they liable to affect the verdict? We think not. In this enlightened age it is common knowledge, and everybody knows, that almost every owner of an automobile carries liability insurance, hence everybody knows how it is obtained and the manner of protection. Each juror knows that it is unjust and wrong to award a verdict against a defendant simply because he may have insurance and when he does so he stultifies himself and is unworthy to sit as a juror. Each juror who has intelligence enough to be a juror knows that when he, by his verdict, unjustly takes money from a defendant, he does him a very great wrong."

In 56 A. L. R. 1488 it is stated: "Many courts take the position that if the fact that the defendant is insured, or facts leading to the inference that he is insured, come out naturally as an incident to a lawful inquiry, without a wilful attempt to bring in this incompetent evidence, no reversible error occurs, even though they are not strictly relevant or competent."

While it is improper for the jury to be informed that a defendant is insured against accident in an action for negligence against him, yet such error is harmless if the statement is unintentionally made and it appears that substantial justice has been done in the case.

The mention of insurance by Dr. Klingman was inadvertently made through the reading of a letter at the instance of counsel for de-

fendant. The reference "this is an insurance case" was fragmentary and did not acquaint the jury with what kind of insurance was involved. The able trial judge was not impressed that it was prejudicial error at the time, for in overruling defendant's motion for mistrial he stated he did not think it was prejudicial or that the jury was attentive to the statement. However, he set the verdict aside and granted a new trial because, according to his letter dated June 21, 1956, the extent of plaintiff's injuries, the size of the verdict, and the short time of deliberation suggested to him that they may have been influenced by the mention of insurance.

We cannot say the verdict was excessive for the injuries sustained. While the record is silent as to the length of time the jury deliberated, it would appear from one of the court's letters to counsel that they were in the jury room a short time. There is nothing unusual or alarming about short deliberations for this frequently occurs in the trial of cases. It does not indicate that the mention of insurance actuated bias or prejudice on the part of the jury, especially when we cannot say the award was excessive. The jury were not misled by some mistaken view of the case and substantial justice has been reached. Our conclusion is that the reference to insurance under the circumstances disclosed was harmless error.

The cross error assigned that the court erred in making a part of the record the two letters it addressed to counsel pertaining to setting aside the verdict is clearly without merit. They were properly included in the record under Rule 5:1 §§ 3(a) and 5(d) of Rules of Court. We find nothing prejudicial in any other cross error assigned.

The verdict for $20,000 returned by the jury in the first trial is reinstated and judgment is now entered thereon in favor of plaintiff against defendant. All proceedings subsequent to the first verdict are annulled. *Brann* v. *F. W. Woolworth Co., supra; Bostic* v. *Whited, supra.*

*Reversed and final judgment.*

HUDGINS, C. J., SPRATLEY, and WHITTLE, JJ., dissenting.

WHITTLE, J., dissenting:

I cannot agree with the majority opinion.

As suggested by the majority, there are cases where the subject of insurance has been mentioned which should not and did not disturb the outcome of the trial. Each case depends upon the way the question is developed and the effect of its development upon the jury as viewed by the trial judge.

We were not present at the trial of this case. The trial, however, was presided over by an able and distinguished judge, thoroughly conscious of his duty to see that justice was done.

The plaintiff sued for $20,000, and within moments after submission of the case the jury on the first trial returned a verdict for the full amount. The record disclosed no evidence of permanent injury. On motion of the defendant, the court, in the exercise of its sound discretion, set this verdict aside and ordered a new trial on all issues.

On the second trial there was no mention of insurance, and the jury returned a verdict for $6,500, which was approved by the court and judgment entered thereon. Certainly one should ponder the question: Why the difference in the amount of the two verdicts?

I share the respect accorded the verdict of a jury *fairly* rendered. I also respect the judgment of the trial judge who, in exercising the broad discretion granted him in the conduct of a trial, either approves or disapproves the verdict.

It is the rule in Virginia that a jury's verdict, *supported by the judgment of the trial judge*, cannot be disturbed unless plainly wrong. This is not true where the verdict is not so supported.

"But with all the respect that is justly due to the verdict of a jury, and which is freely accorded to it, if there has been 'a plain deviation from right and justice' even a court of law will not make itself a party to such a wrong by entering up judgment on it." Burks Pleading and Practice, 4th ed., § 325, pp. 604, 609; *Smith* v. *Turner*, 178 Va. 172, 16 S. E. 2d 370, 136 A. L. R. 1251; *Smith v. Richmond*, 184 Va. 40, 34 S. E. 2d 371.

There are three elements which I think clearly justified the court in setting aside the first verdict: (1) The admission of evidence showing that the defendant carried insurance; (2) the verdict was for the full amount sued for when there was no proof that plaintiff had sustained permanent injuries as alleged; and (3) the immediate return of the verdict showed a lack of deliberation.

While no one of these elements may be sufficient, considered together they justified the trial judge (in the exercise of the sound discretion vested in him) in setting aside the verdict.

"\* \* \* (A) court should be allowed more latitude in setting aside a verdict and granting a new trial than it is in sustaining a demurrer to the evidence, or a motion to strike out all the evidence; because these constitute a decision of the case on the merits, while granting a new trial simply leaves the determination to another jury." Burks Pleading and Practice, *supra*, § 325, p. 615.

The result of the second trial clearly demonstrates the correctness of the trial court's ruling, and the judgment should be affirmed.

HUDGINS, C.J., and SPRATLEY, J., join in this dissent.