Robert P. O'BRIEN, Appellant,

v.

**GOVERNMENT EMPLOYEES INSURANCE COMPANY.**

No. 15906.

United States Court of Appeals Third Circuit.

Argued Oct. 6, 1966.

Decided Jan. 5, 1967.

---

David P. Bruton, Philadelphia, Pa., for appellant.

Harry A. Short, Jr., Philadelphia, Pa. (Liebert, Harvey, Bechtle, Herting & Short, Philadelphia, Pa., on the brief), for appellee.

Before FORMAN, FREEDMAN and SEITZ, Circuit Judges.

## OPINION OF THE COURT

FORMAN, Circuit Judge.

This is an appeal from a decision of the United States District Court for the Eastern District of Pennsylvania, granting judgment on the pleadings against the appellant, Robert P. O'Brien, in an action on an insurance contract issued by the appellee, Government Employees Insurance Company. Jurisdiction exists by reason of diversity of citizenship. As is conceded by the parties, the law of Virginia governs this case.

The allegations of the appellant's complaint, accepted as fact for purposes of this appeal, show that on June 19, 1964, while stationed with the United States Navy in San Juan, Puerto Rico, the appellant was struck by an uninsured automobile driven by one Thomas Colon-Fantuzzi, a resident of Puerto Rico, who is not a party to this litigation. As a result of the accident, the appellant suffered serious permanent bodily injury.

At the time of the accident the appellant was insured by the appellee under a family automobile policy issued to the appellant while he was in Virginia. This policy contained an endorsement, required by the Virginia Uninsured Motorist Act,[1]

(hereinafter the Act) wherein the appellee agreed *inter alia*:

"To pay, in accordance with Section 38.1–381 of the Code of Virginia * * * all sums which the Insured * * * shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile * * * because of * * * bodily injury * * * sustained by the Insured * * * caused by accident and arising out of the ownership, maintenance, or use of such uninsured automobile [up to $15,000]."

After the appellee refused appellant's demand for payment under the endorsement, this action was instituted by the appellant, who had become a Pennsylvania resident subsequent to release from active naval duty. The appellee answered, denying liability on the ground that the appellant failed to establish his legal entitlement to damages from the uninsured motorist in that he had not instituted an action and secured judgment against the motorist, this being a condition precedent to recovery under the policy. On motion by the appellee, the District Court, accepting the argument that under Virginia law a judgment against the motorist was a prerequisite to recovery, granted judgment on the pleadings against the appellant pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.[2]

The appellee argues that the phrase "legally entitled" in both the endorsement and the statute [3] clearly denotes the establishment of a judgment in a separate action against the uninsured motorist. The appellant's construction is that this phrase requires merely that the burden of showing the liability of the uninsured motorist be met by appropriate proof in an action directly against the insurer. The phrase is insufficiently precise to compel either conclusion. Rather, we view the problem as one of deducing the purport of the language from the overall recovery mechanism prescribed by the Act. Consequently we can now dispose

---

1. Va.Code Ann. § 38.1–381, as amended (Supp. 1965).

2. 251 F.Supp. 318 (E.D.Pa.1966).

3. Va.Code Ann. § 38.1–381(b).

of two of the appellant's arguments. The first submission is that since the disputants are parties to a contract, it must be assumed that the appellant can sue his insurer directly unless the statute clearly bars such action. Assuming *arguendo* the correctness of this proposition,[4] it does not reach the problem of whether a necessary element of the insurance company's contractual liability, subsumed by the phrase "legally entitled," is a judgment against the uninsured motorist. The second argument is that since the statute specifies that nothing may be required of the insured except the establishment of legal liability,[5] it follows that there is no warrant to compel him to seek a separate judgment against the motorist when he can offer appropriate proof of legal liability in a direct action against the insurer. Again, however, the argument assumes the very question before us—*viz*, what constitutes the establishment of legal liability.

The Virginia Uninsured Motorist Act, pertinent parts of which are set out in the margin,[6] does not in terms either require or make unnecessary a judgment

4. The assumption that such a suit will lie is weakened by Virginia's policy against informing the jury of the existence of insurance coverage. See notes 16 and 17 infra.

5. Va.Code Ann. § 38.1–381(g).

6. "§ 38.1–381. Liability insurance on motor vehicles * * * ; standard provisions, 'omnibus clause.'–(a) No policy or contract of bodily injury liability insurance, or of property damage liability insurance, *covering liability arising from* the ownership, maintenance or use of any motor vehicle * * *, shall be issued or delivered in this State to the owner of such vehicle * * *, or shall be issued or delivered by any insurer licensed in this State upon any motor vehicle * * * then *principally garaged* * * * or principally used in this State, unless it contains a provision insuring the named insured and any other person responsible for the use of or using the motor vehicle * * * with the consent, express or implied, of the named insured, against *liability for death or injury sustained, or* loss or damage occasioned within the coverage of the policy or contract as a result of negligence in the operation or use of such vehicle * * * by the named insured or by any such person; provided, that every automobile liability insurance policy or contract, or endorsement thereto, insuring private passenger automobiles principally garaged and/or used in Virginia, * * *, when the named insured is an individual or husband and wife, which includes, with respect to any liability insurance provided by the policy, contract or endorsement for use of a nonowned automobile * * *, any provision requiring permission or consent of the owner of such automobile * * * in order that such insurance apply shall be construed to include permission or consent of the custodian in such provision requiring permission or consent of the owner."

* * * * *

"(b) Nor shall any such policy or contract *relating to ownership, maintenance or use of a motor vehicle* be so issued or delivered unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured *motor vehicle, within limits which* shall be no less than the requirements of § 46.-1–1(8), as amended from time to time, of the Code herein; provided, however, that said insured, after January one, nineteen hundred sixty-seven, shall be offered the opportunity to contract, at an additional premium, for limits *higher than those* provided in § 46.1–1(8) so long as such limits do not exceed the limits of the automobile liability coverage provided by such policy. Such endorsement or provisions shall also provide for no less than five thousand dollars coverage for injury *to or destruction of the property of the* insured in any one accident but may provide an exclusion of the first two hundred dollars of such loss or damage.

"(c) As used in this section, the term *'bodily injury'* shall include death resulting therefrom; the term *'insured'* as used in *subsections* (b), (d), (f), and (g) hereof, means the named insured and, while resident of the same household, the spouse of any such named insured, and relatives of either, while in a motor vehicle or otherwise, and any person who uses, with the consent, express or implied, of the named insured, the *motor vehicle to which* the policy applies and a guest in such motor vehicle to which the policy applies or the personal representative of any the above; and the term *'uninsured motor vehicle'* means a motor vehicle

against the uninsured motorist. Counsel have not cited, nor have we been able to find any Virginia decision dispositive of this point. However, the Act sets forth two separate precedures for bringing an action against an uninsured motorist depending upon whether his identity is known or unknown.

If the motorist is known, any insured intending to rely upon the endorsement

as to which there is no (i) bodily injury liability insurance and property damage liability insurance both in the amounts specified by § 46.1–1(8), as amended from time to time, or (ii) there is such insurance but the insurance company writing the same denies coverage thereunder for any reason whatsoever including failure or refusal of the insured to cooperate with such company, (iii) there is no bond or deposit of money or securities in lieu of such bodily injury and property damage liability insurance and (iv) the owner of such motor vehicle has not qualified as a self-insurer under the provisions of § 46.1–395. A motor vehicle shall be deemed to be uninsured if the owner or operator thereof be unknown; provided that recovery under the endorsement or provisions shall be subject to the conditions hereinafter set forth.

"(d) If the owner or operator of any motor vehicle which causes bodily injury or property damage to the insured be unknown, the insured or someone on his behalf, in order for the insured to recover under the endorsement, shall report the accident as required by § 46.1–400, unless such insured is reasonably unable to do so, in which event the insured shall make such report as soon as reasonably practicable under the circumstances.

"(e) If the owner or operator of any vehicle causing injury or damages be unknown, an action may be instituted against the unknown defendant as 'John Doe' and service of process may be made by delivery of a copy of the motion for judgment or other pleadings to the clerk of the court in which the action is brought and service upon the insurance company issuing the policy shall be made as prescribed by law as though such insurance company were a party defendant. The insurance company shall have the right to file pleadings and take other action allowable by law in the name of John Doe.

"(e) (1) Any insured intending to rely on the coverage required by paragraph (b) of this section shall, if any action instituted against the owner or operator of an uninsured motor vehicle, serve a copy of the process upon the insurance company issuing the policy in the manner prescribed by law, as though such insurance company were a party defendant; such company shall thereafter have the right to file pleadings and take other

action allowable by law in the name of the owner or operator of the uninsured motor vehicle or in its own name; provided, however, that nothing in this paragraph shall prevent such owner or operator from employing counsel of his own choice and taking any action in his own interest in connection with such proceeding.

"This subsection shall not apply to any cause of action arising prior to April twenty-seventh, nineteen hundred fifty-nine.

"(f) Any insurer paying a claim under the endorsement or provisions required by paragraph (b) of this section shall be subrogated to the rights of the insured to whom such claim was paid against the person causing such injury, death or damage to the extent that payment was made; provided that the bringing of an action against the unknown owner or operator as John Doe or the conclusion of such can action shall not constitute a bar to the insured, if the identity of the owner or operator who caused the injury or damages complained of becomes known, from bringing an action against the owner or operator theretofore proceeded against as John Doe, provided that any recovery against such owner or operator shall be paid to the insurance company to the extent that such insurance company paid the named insured in the action brought against such owner or operator as John Doe, except that such insurance company shall pay its proportionate part of any reasonable costs and expense incurred in connection therewith including reasonable attorney's fees. Nothing in an endorsement or provisions made under this paragraph nor any other provision of law shall operate to prevent the joining in an action against John Doe of the owner or operator of the motor vehicle causing such injury as a party defendant and such joinder is hereby specifically authorized.

"(g) No such endorsement or provisions shall contain any provision requiring arbitration of any claim arising under such endorsement or provisions, nor may anything be required of the insured except the establishment of legal liability, nor shall the insured be restricted or prevented in any manner from employing legal counsel or instituting legal proceedings."

must, "if any action is instituted against the owner or operator of an uninsured motor vehicle," serve process upon the insurer "as though such insurance company were a party defendant." The insurance company then has a right to defend the action in the name of the defendant or in its own name, but shall not interfere with the known defendant's right to employ counsel and take appropriate action in his own behalf.[7]

If, however, the motorist is unknown, he is deemed uninsured,[8] and the insured may institute suit against him as "John Doe," serving process by delivering a copy of the motion for judgment or other pleadings to the clerk of the court in which the action is brought and by serving such papers on the insurer. The insurer has the right to file pleadings and defend the action in the name of John Doe.[9] Should the owner or operator of the vehicle causing the injury become known, he may be joined in the action against John Doe.[10]

The existence of detailed provisions regulating suit by an insured against a known uninsured motorist indicates at the minimum that the Virginia legislature envisioned such a suit as part of the recovery mechanism. Moreover, had a direct action against the insurer been thought to be available, the most obvious situation for its application would have been the case where the motorist was unknown. Yet, for this occurrence the Virginia legislature created a John Doe procedure to simulate, as closely as circumstances will permit, a suit against a known motorist.[11] The failure of the legislature to employ the much simpler procedure of a direct suit against the insurer negatives its availability. While the appellant argues that the suit against the known motorist or "John Doe" is optional because of certain "if" and "may" language in the statute,[12] we think the District Court was clearly right in stating that such a reading would reduce the prescriptive provisions to mere surplusage:

"If the plaintiff already had the right to sue the insurance company directly, this court can think of no reason why the General Assembly of Virginia would have enacted the alternative procedure allowing the plaintiff to proceed against a fictional person. It would be especially absurd here where it is an avenue that is more cumbersome than making the insurance company the actual defendant."[13]

The District Court also reasoned that the purpose of the John Doe procedure was to prevent the jury from being informed of the existence of insurance coverage so as to avoid prejudgment on the question of liability, and that the appellant's position would subvert this policy:

"There can be no other reason for the John Doe procedure than to preserve Virginia's policy against informing the jury of the existence of insurance in a case of this kind. See Simmons v. Boyd, 199 Va. 806, 102 S.E.2d 292 (1958); Rhinehart & Dennis Co. v. Brown, 137 Va. 670, 120 S.E. 269 (1923); 47 Va.L.Rev. 145, 159–60 (1961). It is difficult to imagine therefore that the legislature intended to vitiate this longstanding policy by allowing a plaintiff to sue the insurance company directly if the alleged tortfeasor is known when at the same time it was enacting the John

7. Va.Code Ann. § 38.1–381(e) (1).

8. Va.Code Ann. § 38.1–381(c).

9. Va.Code Ann. § 38.1–381(e).

10. Va.Code Ann. § 38.1–381(f).

11. The John Doe action is not one *ex contractu* against the insurance company, even though the insurance company may be the real and only party liable. Rather, it is a suit *ex delicto* involving only

"the establishment of legal liability on the unknown uninsured motorist." Doe v. Brown, 203 Va. 508, 515, 125 S.E.2d 159, 164 (1962); accord Rodgers v. Danko, 204 Va. 140, 129 S.E.2d 828, 829 (1963); see 7 Wm. & Mary L.Rev. 106, 118–120 (1966).

12. Supra note 9.

13. 251 F.Supp. at 321–322.

Doe scheme, the only purpose of which was to keep the fact of insurance from the minds of the jury."[14]

In answer to this persuasive position the appellant argues that the District Court overlooked a vital distinction between the case where the motorist is known and that where he is unknown. In the latter the prejudice to the insurer is said to be vastly greater because of (1) increased sympathy for the plaintiff in a hit-and-run case [15] and (2) the absence of the most important witness for the insurance company, the defendant motorist. While the appellant's appreciation of the insurance company's increased disadvantage is for the most part correct, it is clear that the Virginia policy against notifying the jury of insurance coverage both antedates the unknown motorist problem and has been generally applied in cases where the alleged tortfeasor is known and is in fact the party defendant.[16] Moreover, strong evidence of this policy is found in Section 8–96 of the Virginia Code,[17] prohibiting the joinder of an insurance company as a

party in a negligence action on account of its issuance of liability insurance to a party to that action. Simply put, there is every indication that the Virginia General Assembly did not intend to restrict the insurer's anonymity to the John Doe action.

Finally, the appellant advances two other points which we find without merit. First he argues that under § 38.1–381 (g) of the Act the *insurer* shall not be restricted from " 'instituting legal proceedings' * * * against the uninsured motorist." However, that section in fact states that the *insured* shall not be so restricted. Then the appellant argues that it cannot be presumed that the Act contemplates two suits for the vindication of the insured's rights. But the Virginia Supreme Court has made it clear that absent agreement, two suits may indeed be necessary.[18]

We also note that Virginia's sister state, South Carolina, has enacted an Uninsured Motorists Act,[19] modeled after the Virginia Act, which contains provisions, including a John Doe procedure,

---

14. Id. at 322.

15. A John Doe action need not always involve a hit and run case since it has been held that a motorist may be "unknown" if the insured under certain circumstances fails to take his name at the scene of the accident. Mangus v. Doe, 203 Va. 518, 125 S.E.2d 166 (1962).

16. See the authorities cited by the District Court, text at note 14 supra. The Virginia policy against disclosure of insurance coverage is not, however, inflexible, but is tempered by an appreciation that many jurors will assume the involvement of some insurance coverage even without being told so. Thus disclosure to the jury may not necessarily constitute reversible error. Ames & Webb, Inc. v. Commercial Laundry Co., Inc., 204 Va. 616, 133 S.E.2d 547 (1963) ; Simmons v. Boyd, 199 Va. 806, 102 S.E.2d 292 (1958). However, the problem here is not one of deciding what constitutes *reversible* error *after* a trial has taken place, but one of recognizing that as long as it be error, it should be obviated before trial. In particular, the foregoing cases place emphasis on whether the disclosure of insurance coverage was purposeful or inad-

vertent and on whether the insurance company's precise role as the loss-bearer was made known to the jury. Not only would both these elements be present were we to allow a direct suit here against the insurer, but also it should be noted that in the *Simmons* and *Commercial Laundry* cases, supra, there was an actual defendant other than the insurance company involved, while here the insurance company would be the only defendant and the center of the jury's focus.

17. Section 8–96, Va.Code Ann. dealing with joinder of parties provides in part:
"Nothing in this section shall be construed to permit the joinder, or addition as a new party, of any insurance company on account of the issuance to any party to a cause of any policy or contract of liability insurance, or on account of the issuance by any such company of any policy or contract of liability insurance for the benefit of or that will inure to the benefit of any party to any cause."

18. See the cases cited supra note 11.

19. Code of So.Car.Ann. §§ 46–750.11– 46–750.39 as amended (Supp.1965).

identical to the Virginia Act in all respects material to the present case. Although the courts of that state have not passed upon the identical question involved here, there is no doubt that they view a judgment against the motorist as necessary to a suit against the insurer on the contract.[20] For example, in Laird v. Nationwide Ins. Co.,[21] the Supreme Court of South Carolina stated:

"Recovery under the uninsured endorsement is subject to the condition that the insured establish legal liability on the part of the uninsured motorist. Such an action is one *ex delicto* and the only issues to be determined therein are the liability and the amount of damage. After judgment is entered against the uninsured motorist, a direct action *ex contractu* can be brought to recover from the insurance company on its endorsement, and policy defenses may be properly raised by the insurance company. Doe v. Brown, 203 Va. 508, 125 S.E.2d 159; Rodgers v. Danko, 204 Va. 140, 129 S.E.2d 828."

And in Vernon v. Harleysville Mut. Cas. Co.,[22] the obligation of the insurance company under the statute was characterized as follows:

"[T]he endorsement guarantees payment, within specified limits, of a judgment recovered against an uninsured motorist on his tort liability."[23]

Language reflecting this same conception of the operation of the act can be found in many other opinions.[24]

Absent any definitive pronouncement of the Virginia courts settling the issue posed herein,[25] we are constrained to think that they would hold that recovery under the Virginia Act and thus under the endorsement requires that the insured first obtain judgment against the uninsured motorist. Hence the judgment of the United States District Court for the Eastern District of Pennsylvania dismissing the appellant's action on the pleadings will be affirmed.

---

20. See Doak & Richardson, The South Carolina Uninsured Motorist Law, 15 So. Car.L.Rev. 739 (1963).

21. 243 S.C. 388, 394, 134 S.E.2d 206, 209 (1964).

22. 244 S.C. 152, 158, 135 S.E.2d 841, 844 (1964).

23. Compare, with reference to the Virginia Act, 7 Wm. & Mary L.Rev. 106, 122 (1966).

24. E. g., Sheffield v. American Indemnity Co., 245 S.C. 389, 140 S.E.2d 787 (1965); Hatchett v. Nationwide Mut. Ins. Co., 244 S.C. 425, 137 S.E.2d 608 (1964); see Johnson v. General Motors Corp., 242 F.Supp. 778 (E.D.Va.1965); Rodgers v. Danko, supra note 11; see also Levy v. American Auto Ins. Co., 31 Ill.App.2d 157, 175 N.E.2d 607 (1961); Kirouac v. Healey, 104 N.H. 157, 181 A.2d 634 (1962).

25. We are aware of incidental problems in the multistate application of the Virginia Uninsured Motorist Act due to the failure of that Act to address itself to such application under certain circumstances. For example, if the motorist here were unknown, the appellant could have brought a John Doe action in Virginia and thus avoided Puerto Rican litigation. Hodgson v. Doe, 203 Va. 938, 128 S.E.2d 444 (1962). In light of a Virginia decision that a motorist may be "unknown" if only because the insured failed, in certain circumstances, to get his name at the scene of the accident, Mangus v. Doe, supra note 15, our decision disallowing a direct suit against the insurer may encourage fraudulent claims that the motorist was unknown, for the purpose of avoiding the trouble and expense of distant litigation through the institution of a John Doe action. This would also result in the insurer's being denied the name of the adverse motorist, its best potential witness. Federal courts will not face this problem since they cannot entertain John Doe actions. Johnson v. General Motors Corp., supra note 24. Thus the difficulties of multistate application of the Act, distinct from our problem involving a known motorist and deduction of the intended recovery mechanism must await solution by judicial or legislative action of Virginia.