## Richmond

### JUDY M. COLEMAN

### V.

### BLANKENSHIP OIL CORPORATION

June 6, 1980.

Record No. 780859.

Present: All the Justices.

*William B. Hanes* (*Kuykendall, Whiting, Costello & Hanes*, on briefs), for appellant.

*Willam O. Snead, III* (*Carr, Jordan, Coyne & Savits*, on brief), for appellee.

POFF, J., delivered the opinion of the Court.

We granted the appeal in this case to review the trial court's order setting aside a jury verdict awarding the plaintiff $86,215 in damages for injuries sustained in an automobile accident. The trial court, holding that the evidence of primary negligence, contributory negligence, and proximate cause raised jury questions, had overruled the defendant's motions to strike the plaintiff's evidence. The verdict was rendered July 28, 1977. By final order entered March 22, 1978, the trial judge reversed his earlier ruling and held, as matters of law, that the plaintiff was guilty of contributory negligence and that the defendant's negligence was not the proximate cause of the accident. On these grounds, he set the verdict aside and granted the defendant judgment *non obstante veredicto*. Being of opinion that the issues of contributory negligence and proximate cause turned upon questions of fact properly submitted to and resolved by the jury, we reverse the judgment.

The accident occurred in the Round Hill community on State Route 719 north of its intersection with State Route 7 which runs east and west. This intersection lies 75 feet east of a point on Route 7 where Route 719 continues south. North of this double intersection, Route 719 is a straight two-lane, blacktop road, running slightly upgrade. The posted speed limit was 25 m.p.h.

The accident happened about 3:15 p.m. on December 10, 1973, a clear, dry day. Approximately two hours earlier, Channing Herrell was driving a heating oil truck for his employer, the defendant Blankenship Oil Corporation. At a point 700 feet north of the intersection, he noticed oil spilling from the rear of the truck. After parking on the right shoulder, he discovered that the spillage was caused by a broken pin on a hose connection. While he was repairing the hose, an unknown passerby informed him that the fire department was washing the oil from the road. Herrell made no attempt to

verify the information. He told his employer what had happened, but neither reported the incident to the authorities.

The fire station is located on the west side of Route 719 north of the intersection. In response to an alarm, a fire truck was dispatched to a point south of the intersection to "washdown" the road. Olen Smith, one of the firemen on the truck, testified at trial that he did not notice oil on Route 719 north of the intersection. Efforts to wash the oil from the pavement were counterproductive, so the Highway Department sent a dump truck loaded with sand to the scene. Robert Foreback and two assistants spread sand along Route 7 at the intersection and north along Route 719 for a distance of 50 to 100 feet. At that point, they parked the orange-colored truck facing south, partly in the northbound lane and partly on the shoulder, and turned on the "four-way flashers" and a "fireball flasher". Wearing a Highway Department hardhat, Foreback stood in the road and directed traffic around the truck. Since he considered the oil hazard obvious to motorists, he did not think it necessary to post warning signs or to close the road.

The plaintiff, traveling east on Route 7 toward the intersection, switched on her left turn signal and slowed down to allow a car approaching on Route 719 from the south to complete a right turn onto Route 7. She followed that car until it had passed through the double intersection. The plaintiff then turned left and proceeded north on Route 719. At trial she explained she had "never noticed anything unusual" going on because she had been "watching to make sure he was out of [her] way" before she turned.

Approximately 100 feet ahead, she saw two trucks facing her in her lane. She thought the first was painted green. She could not recall the color of the second, and she did not observe any flashing lights. Unable to see beyond the trucks, she stopped in the right lane. A man standing near the trucks looked to the north and motioned for her to pass in the left lane. Her car, a Plymouth Duster, was equipped with a manual transmission. Engaging the first gear and moving into the left lane, she saw an International Scout vehicle approaching from the north. For the first time, she noticed that the road appeared "all wet and shining" and she thought "they're putting down tar and asphalt." According to her testimony, when she returned to the right lane to avoid the oncoming vehicle, "I felt like the car was whipping, so I immediately took both feet off of the pedals" and "just held onto the steering wheel". She explained that "people had told me" that this was the safest procedure "if you

hit ice." "I wasn't even traveling as much as 15 miles an hour," she said, "because I still had it in first gear."

Frank Entwistle, driver of the Scout, testified that "[t]he hard top was entirely covered" as if it "was freshly tarred or oiled", and "my first thought was that the highway department was covering the road." When he saw the Duster, "the back end started swerving" and "started going from lane to lane" and it was obvious to him that the driver "had lost control of the car." He estimated its speed at "[a]bout 20 miles an hour." His passenger "guessed" that the Duster "was probably going about 35 miles an hour."

Entwistle shifted the Scout to a lower gear, slowed down, and stopped with the right wheels off the pavement. The plaintiff's car traveled out of control for 200 feet before striking the left front of the Scout. The impact knocked the Scout back two feet; the Duster came to rest in the ditch on the east side of the road. Both vehicles were substantially damaged, and the plaintiff was severely injured in the collision.

■ Preliminarily, we note the defendant's argument on brief that "the court ruled as a matter of law that the defendant owed no legal duty to the plaintiff, these duties having been assumed by the agencies of the sovereign." We find no such ruling in the record. In its findings of fact, the trial court did state that "the fire company attempted to remove the substance from the road, and when its efforts failed, the Department of Highways assumed the task of correcting the condition . . . [and] the responsibility for directing traffic". But at no time did the court rule that the defendant was thereby relieved of liability for negligence in depositing hazardous material upon a highway or for breach of the duty imposed by Code § 18.2-324 to "immediately remove the same or cause it to be removed." Instead, the trial court based its decision solely on considerations of contributory negligence and proximate cause, both of which presuppose breach of a legal duty by the defendant. Thus, primary negligence is not at issue on this appeal.

■ The parties agree upon the scope of review of a jury's verdict.

"[T]he power conferred on the trial judge under Code § 8-352 [now, Code § 8.01-430] to set aside a jury verdict and enter final judgment can only be exercised where the verdict is plainly wrong or without credible evidence to support it. If there is a conflict in the testimony on a material point, or if reasonable men may differ in their conclusions of fact to be drawn from the

evidence, or if the conclusion is dependent on the weight to be given the testimony, the trial judge cannot substitute his conclusion for that of the jury merely because he would have voted for a different verdict if he had been on the jury. The weight of a jury's verdict, when there is credible evidence upon which it can be based, is not overborne by the trial judge's disapproval. The question involved under such circumstances is one of fact for determination by the jury, and their verdict cannot be disturbed by either the trial court or by this Court, and if improperly set aside by the trial court it will be reinstated by this Court."

*Commonwealth* v. *McNeely,* 204 Va. 218, 222, 129 S.E.2d 687, 689-90 (1963); *accord, Lane* v. *Scott,* 220 Va. 578, 580, 260 S.E.2d 238, 240 (1979).

■ The defendant also acknowledges that, ordinarily, contributory negligence is a jury question. Defendant insists, however, that the evidence concerning lookout, speed, and control leaves no room for reasonable fact finders to disagree that the plaintiff was guilty of contributory negligence.

A proper lookout, the defendant asserts, would have disclosed the oil, the sand, and the flashers and thereby alerted the plaintiff to an "open and obvious" danger. Whether a danger is open and obvious is usually a jury question. *Shiflett* v. *Timberlake, Inc.,* 205 Va. 406, 137 S.E.2d 908 (1964). The lookout duty is governed by the standard of reasonable care. We think a jury could justifiably find that the plaintiff maintained a reasonable lookout under the circumstances obtaining.

As the plaintiff approached the sanded area, a car entered the road she was traveling. After that car had cleared the intersection, she turned left and saw two trucks blocking her lane only 100 feet ahead. It is legitimate to infer that a person thus lawfully occupied might reasonably overlook the condition of the surface of the road. And the jury could have rejected Forcback's testimony that the flashers were operating or believed that the plaintiff's vision was obscured by the green truck parked between her and the lights. The fireman who traveled across the road shortly after the spillage did not see the oil. Moreover, even if the plaintiff should have seen the oil and sand and recognized the danger, she had no reason to know that the peril extended beyond the trucks.

■ Despite the slick pavement, Entwistle was able to stop. The defendant maintains that one of the reasons the plaintiff was unable to do so was that she was traveling "at a speed too fast under the

conditions". But the plaintiff, seeing the Scout approaching in a southbound lane, was compelled to turn into the northbound lane, a maneuver which caused her car to swerve and slide in the oil from lane to lane. Entwistle, on the other hand, was decelerating and braking in a continuing line of travel. Given such facts, the jury could have concluded that speed did not account for the difference in the vehicles' movements and was not a contributing cause of the collision. In any event, what speed was reasonable and what speed the plaintiff was traveling were questions of fact raised by conflicting testimonial estimates and the physical evidence.

 It also was the province of the jury to determine whether, in other respects, the plaintiff exercised due care in operating her automobile. The standard of care applicable to the plaintiff was defined in an instruction patterned after the following principles summarized in *Finch* v. *McRae,* 206 Va. 917, 922, 147 S.E.2d 83, 88 (1966):

> "As held in *Cowles* v. *Zahn,* 206 Va. 743, 146 S.E.2d 200 (1966), the jury should determine, where the evidence is conflicting or different inferences may be drawn from the evidence, whether a driver was confronted with an emergency, not created by his own negligence, and whether the driver conducted himself as an ordinarily prudent person might have done under the same or similar circumstances. 'One acting under the stress of an emergency is to be judged for negligence with a different measure from that used in weighing acts done under normal circumstances and conditions.' *Berry* v. *Hamman,* 203 Va. 596, 598, 125 S.E.2d 851, 853 (1962)."

The defendant, who raised no objection to the instruction at trial, contends that the plaintiff was guilty of contributory negligence in that, when her car began to swerve, she "immediately took both feet off the pedals and just held onto the steering wheel...and, for over 200 feet..., made no effort to either steer or stop her car".

But the defendant does not attempt to suggest what conduct would have been prudent. What corrective action is prudent when a slick surface causes a driver to lose control of his car is hardly a matter of law. Should he disengage the clutch? Apply the brakes? Steer in the direction of the slide and, as the direction changes from time to time, turn the wheel again and again? Is there any assurance that any maneuver will enable him to bring the car under control?

Considering these questions in light of the trial court's instructions, the jury necessarily found that the plaintiff conducted herself as an

ordinarily prudent person might have done under the same or similar circumstances. It cannot be fairly said that this finding is plainly wrong.

We hold that the trial court erred in ruling as a matter of law that the plaintiff was guilty of contributory negligence.

■ We now consider the ruling that the defendant's negligence "was a remote cause of the collision and not a proximate cause."

In support of this ruling, the defendant says that, with full knowledge of "the extent of the hazard involved", Highway Department employees "blocked the plaintiff's lane of traffic...[and] her view of the foreign substance, and...waved the plaintiff into oncoming traffic and into the hazardous substance without warning the plaintiff of either." Such conduct, the defendant argues, "acted as an intervening and superseding cause as a matter of law, relieving the defendant of any primary negligence on its part."

> "The proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred."

*Beale* v. *Jones,* 210 Va. 519, 522, 171 S.E.2d 851, 853 (1970).

The brevity of this definition, valid as it is, invites explication. There may, of course, be more than one proximate cause of an event. And not every intervening cause is a superseding cause. In order to relieve a defendant of liability for his negligence, negligence intervening between the defendant's negligence and the injury "must so entirely supersede the operation of the defendant's negligence that it alone, without the defendant's [negligence contributing] thereto in the slightest degree, produces the injury." *Richmond* v. *Gay,* 103 Va. 320, 324, 49 S.E. 482, 483 (1905). Furthermore, an intervening cause is not a superseding cause if it was "put into operation by the defendant's wrongful act or omission". *Jefferson Hospital, Inc.* v. *Van Lear,* 186 Va. 74, 81, 41 S.E.2d 441, 444 (1947). *See* Restatement (Second) of Torts §§ 439, 442 B, 443 (1965).

■ The defendant's negligence in spilling the oil was the sole proximate cause of the hazardous condition of the road. If the conduct of the Highway Department employees was negligent (a conclusion the jury might have rejected), that conduct was "put into operation by the defendant's wrongful act"' and does not, therefore, relieve

the defendant of liability for its negligence. Aside from this point, "whether the negligence of [the defendant] continued until the time of the accident and proximately contributed to it in the slightest degree . . . presented questions of fact for determination by the jury, not questions of law for the court." *Cox* v. *Mabe,* 214 Va. 705, 709, 204 S.E.2d 253, 256-57 (1974).

The judgment will be reversed, the jury's verdict will be reinstated, and final judgment will be entered here for the plaintiff.

*Reversed and final judgment.*

HARRISON, J., dissenting.

The trial judge found as a matter of law that the spillage of oil by the defendant was a remote cause of the collision and that the plaintiff was guilty of contributory negligence. I agree with both conclusions.

The oil spillage occurred about midday on December 10, 1973. The accident occurred several hours thereafter, during which time the highway had been used without incident by the traveling public. The spillage was admittedly due to the malfunction of a "whip hose" connection. Soon after the spillage occurred members of a local fire department and employees of the State Highway Department began their efforts to repair the road and to remove any hazard caused by the spillage. The duty to repair and to render safe the road was the responsibility of the Highway Department. While the defendant's driver might have been more solicitous than he was, the evidence does not show any additional thing that he could have done to alleviate the condition that was not already being done by the Highway Department.

The hazard that existed at the intersection of Routes 7 and 719, and along 719, was an open and obvious one. Plaintiff saw the two large trucks parked in her lane on Route 719 and the highway employees at the scene. At least one of the trucks was equipped with a four-way flashing light and with a fireball flasher, and a highway department employee stated that the lights were operating. Plaintiff says that she brought her car to a complete stop and pulled around the trucks in first gear upon being waved to do so by a highway employee. Plaintiff noticed that the road was "wet and shining," like fresh tar. She testified that her car remained in the lowest possible gear until she collided with the "Scout" vehicle, which had stopped with its right wheels off the pavement. Plaintiff first noticed the Scout when it

was approximately 400 feet away. At the point when she detected that her vehicle was being affected by the condition of the highway, plaintiff was then some 200 feet from the stopped Scout. At that time plaintiff admits that she took "both feet off of the pedals" and "just held onto the steering wheel" until she collided with the parked vehicle. This amounted to a complete abandonment of control by the plaintiff.

I find it incredible that plaintiff's automobile, unhindered by other traffic or distractions, traveling upgrade in "low" or first gear, could not have been stopped, slowed, or controlled, or that some other evasive action could not have been taken by its driver, within a distance the equivalent of two-thirds the length of a football field. Obviously the accident involved in this case was caused by the excessive speed, under the existing circumstances, of plaintiff's car, or by the complete inattention and ineptness of the plaintiff in the operation of her vehicle. In either event she was contributorily negligent. "Contributory negligence is nothing more than the failure of plaintiff to exercise ordinary care for his own safety. . . ." *Yeary* v. *Holbrook,* 171 Va. 266, 285, 198 S.E. 441, 450 (1938). Therefore, I dissent from the decision of the majority.