629 So.2d 211 (1993)
Ivan BARRIOS, M.D., Appellant,
v.
Donald DARRACH, Appellee.
No. 91-2782.
District Court of Appeal of Florida, Third District.
November 23, 1993.
*212 Stephens, Lynn, Klein & McNicholas and Philip D. Parrish, Miami, for appellant.
Freidin, Hirsh & Gerrard, Cooper & Wolfe, and Christine M. Ng and Sharon Wolfe, Miami, for appellee.
Before BARKDULL, NESBITT and LEVY, JJ.

On Motion for Clarification Granted
NESBITT, Judge.
A doctor appeals an adverse final judgment in a medical malpractice action. We reverse the judgment and award appellant a new trial.
In December 1985, Donald Darrach sustained a tibial (shinbone) fracture. A physician set the leg and put a cast on it. Because the fracture was not healing properly, the physician referred Darrach to the defendant, Dr. Ivan Barrios, to determine if surgery would be necessary. Dr. Barrios first saw Darrach on December 27, 1985, and at that time discussed the two surgical options available to Darrach: one using a metal plate, the second using a rod. Dr. Barrios ultimately operated inserting the metal plate.[1]
Dr. Barrios saw Darrach several times post-surgery. On January 4, 1986, Dr. Barrios examined Darrach in the hospital immediately prior to discharge and, according to Dr. Barrios found no signs of infection at the site of the surgical incision. However, he did note some skin necrosis (dead skin), which he believed to be the result of decreased vascularization. Dr. Barrios saw Darrach three more times and on each occasion saw no signs of infection, although he continued to observe small amounts of necrotic tissue. During this time period, Darrach was undergoing physical therapy, and the physical therapist testified that the wound was healing and that she also detected no signs of infection.
Three days after leaving the care of Dr. Barrios, Darrach went to see Dr. Pritchard. Upon examination, Dr. Pritchard cultured the wound. By the time Dr. Pritchard saw Darrach a second time, the wound showed signs of infection, and Dr. Pritchard hospitalized Darrach and put him on intravenous antibiotics. When Darrach was discharged from the hospital, according to Dr. Pritchard, the wound appeared clean, and Dr. Pritchard felt that the infection was under control.
A week later, Dr. Pritchard readmitted Darrach to the hospital to remove the plate from his leg. Approximately two weeks after his discharge, he returned to have a skin graft to cover the wound. At that point, according to Dr. Pritchard, he believed that the infection had been eradicated. However, approximately eight weeks later, Darrach suffered a spontaneous drainage through the skin graft and Dr. Pritchard recommended six weeks of intravenous antibiotic therapy in the hospital. In June 1986, Darrach consulted several physicians at Mt. Sinai Hospital. On July 22, 1986, they diagnosed him as suffering from chronic osteomyelitis and hospitalized him again for intensive antibiotic treatment and then for a bone and skin graft.
Thereafter, Darrach brought the instant action for medical malpractice against Drs. Barrios and Pritchard. Pretrial, Dr. Pritchard settled with Darrach and post-trial, Dr. Barrios received a set-off for that amount. Before trial, Darrach moved for the trial court to exclude references to any alleged negligence of Dr. Pritchard. Dr. Barrios claimed that such evidence was relevant to the issue of causation and that it was appropriate in this medical malpractice case to comment on the standard of care of subsequent and other treating physicians. Darrach argued that any alleged negligence of a subsequent treating physician was irrelevant to whether Barrios was negligent in allowing the infection to develop in the first place. Over Dr. Barrios' objection, the trial court granted Darrach's motion in limine.
On the fourth day of trial, Darrach's counsel withdrew a portion of his motion in limine, agreeing to allow Dr. Barrios to present *213 evidence of subsequent causation. Dr. Barrios moved for mistrial, arguing that he had been prejudiced by this late limited withdrawal because he had not been able to outline such evidence in his opening statement nor cross-examine Darrach's witnesses on this point. The trial court offered Dr. Barrios time to re-group and to recall witnesses but Dr. Barrios argued he could not rectify the problem, in part because Darrach's expert witness had already left town. The trial court denied the motion for mistrial. The jury returned a verdict in Darrach's favor and this appeal followed.
Where inconsistent theories of causation exist, it is error not to instruct on all theories. Fischer v. Ganju, 168 Wis.2d 834, 485 N.W.2d 10 (1992). When a plaintiff has been treated by successive physicians and at some point during the course of treatment has sustained a single injury, absent the proof that the negligence, if any, of the initial tortfeasor was the proximate cause of the injury as a matter of law, the jury should be presented all relevant information concerning the plaintiff's care and treatment so that it can appropriately determine how the injury occurred. In the instant case, with the timely presentation of all the evidence, a jury could have concluded, as Barrios argues, that it was Dr. Pritchard's actions which caused the injury or, alternatively, that the acts claimed to have been committed were not "demonstrably separable in time and effect," Leesburg Hosp. Ass'n v. Carter, 321 So.2d 433, 434 (Fla. 2d DCA 1975), both doctors being jointly responsible for the injury.
The basis for the motion in limine which was ordered and later rescinded was Darrach's argument that any action or inaction by the second physician, Dr. Pritchard, was irrelevant to the determination of Dr. Barrios' liability, based upon the analysis outlined in Stuart v. Hertz, 351 So.2d 703 (Fla. 1977). In Hertz, the Florida Supreme Court held that a negligent tortfeasor could not bring a third party claim against a subsequent treating physician for alleged malpractice which aggravated the injuries the plaintiff initially sustained. However, unlike Hertz or Davidson v. Gaillard, 584 So.2d 71 (Fla. 1st DCA), review denied, 591 So.2d 181 (Fla. 1991), published shortly after the instant trial and relied upon by Darrach both in his hearing on the post-trial motions and now, the case sub judice can be described as a single injury of disputed causation. Thus, as in Farina v. Zann, 609 So.2d 629 (Fla. 4th DCA 1992), while Darrach was entitled to an instruction on the law set out in Hertz, the Hertz principle should not have been used to exclude the argument and evidence Dr. Barrios sought to admit.
In the alternative, Dr. Barrios was not able to construct and advance his defense in his preferred manner for opening argument and for several days of trial. By the time the motion was withdrawn Darrach's expert witness had already left town, precluding re-cross examination. There was testimony available to support the doctor's theory, and the delay in allowing him to partially raise that argument, caused by the motion in limine, granted and thereafter withdrawn, clearly prejudiced him. See Office Depot, Inc. v. Miller, 584 So.2d 587 (Fla. 4th DCA 1991). In sum, here, the jury may not have been presented with all the facts necessary to make an appropriate determination. See Southern Trenching, Inc. v. Diago, 600 So.2d 1166 (Fla. 3d DCA), review denied, 613 So.2d 3 (Fla. 1992); Steiger v. Mass. Cas. Ins. Co., 273 So.2d 4 (Fla. 3d DCA 1973).
Accordingly, we reverse the judgment and award the defendant a new trial.
NOTES
[1] The type of surgery to perform on such a fracture was a major issue at trial. Darrach and his medical expert testified that the implantation of the rod would have been the more appropriate method because the use of the plate increased the likelihood of infection, while Dr. Barrios' expert testified that the use of the plate was the correct method because of the location and condition of the fracture in the leg.