Present: Carrico, C.J., Compton, Stephenson, Lacy, Hassell, and
Keenan, JJ., and Whiting, Senior Justice

HAROLD S. JENKINS, M.D., ET AL.

v. Record No. 950661    OPINION BY JUSTICE BARBARA MILANO KEENAN
                                              January 12, 1996
TROY R. PAYNE, PERSONAL
REPRESENTATIVE OF THE ESTATE
OF VERONICA L. PAYNE


            FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                        Donald M. Haddock, Judge


     In this medical malpractice case, we consider whether the
trial court erred in excluding from the jury's consideration (1)
opinion evidence that another physician, who had settled the
plaintiff's claim against him, was negligent in his treatment of
the decedent, and (2) the defendants' argument that the settling
physician was the sole proximate cause of the decedent's death.

     Veronica L. Payne (Payne) filed a motion for judgment
against defendants Harold S. Jenkins, M.D., Jill W. York, R.N.,
P.N.P., Barry S. Rothman, M.D., and Doctors Rothman, Grapin, and
McKnight, P.C., alleging medical malpractice for failure to
diagnose and treat Paget's Disease, a form of breast cancer.
While that action was pending, Payne died from the disease. Troy
R. Payne, the personal representative of her estate, was
substituted as plaintiff, and the motion for judgment was amended
to allege a cause of action in wrongful death.

     Prior to trial, the plaintiff settled his claim against Dr.
Rothman and Dr. Rothman's professional corporation. Based on
this fact, the plaintiff made a motion in limine requesting the
trial court to exclude any opinion evidence that Dr. Rothman was

negligent in his treatment of Payne.  The defendants objected, arguing that their defense would be based on the theory that Dr. Rothman's negligence was the sole proximate cause of Payne's death.  The defendants contended that, in order to present this defense to the jury, they needed to show that Dr. Rothman was negligent.

The trial court initially denied the motion in limine, stating, "I don't feel like I can rule as a matter of law . . . [on the] representations from counsel."  The court later granted the motion during trial, ruling that Dr. Rothman's conduct was "at the very best . . . concurrent negligence as opposed to [superseding].  And that being the case, I don't think Dr. Rothman's negligence is relevant to the issues that this jury has got to decide."[1]

The evidence at trial showed that Paget's Disease is a cancer of the nipple and milk ducts.  Abnormalities of the nipple, including discharge and lesions, are classic symptoms of the disease.  As the cancer grows, the cells migrate along the milk ducts.  The cells eventually drain out of the nipple, causing the nipple to become irritated and inflamed.

---

[1]The trial court's ruling did not preclude the defendants from introducing into evidence the facts surrounding Dr. Rothman's treatment of Payne, but only excluded opinion testimony that Dr. Rothman was negligent.

Frequently, in the early stages of the disease, no mass is present in the breast tissue.  Thus, mammography does not indicate the presence of the cancer in its early stages, and a biopsy is the best method of providing a timely diagnosis.

Because Paget's Disease initially does not affect tissue outside the milk ducts, it is not invasive in its early stages. While the cancer remains non-invasive, it grows slowly and is highly curable.  This type of breast cancer can remain non-invasive for several years.  There is about a 90% survival rate for patients with Paget's Disease who receive treatment before the cancer becomes invasive.

In December 1992, Payne was diagnosed with the disease in its terminal stage.  At that time, she had palpable masses in her left breast and had been experiencing continual soreness and discharge from her left nipple for two years.  She died in April 1994.

Payne had first sought treatment for her breast abnormalities on January 7, 1991, when she was examined by York, a nurse practitioner working under the supervision of Dr. Jenkins.  She informed York that, for a period of several months, she had been experiencing a discharge and constant scabbing of her left nipple.  York ordered a mammogram and prescribed oral and topical antibiotics as treatment for infection of the nipple. The mammogram showed no signs of tumors in the breast.

On July 18, 1991, Payne returned to York complaining of the

continuing pain and discharge from her left breast. York referred her to a dermatologist for treatment of the continuing irritation. York testified that she believed the dermatologist would perform a biopsy on the abnormal tissue.

The medical records do not indicate that York discussed with Payne the need for a biopsy or the possibility of cancer. Further, York testified that she did not determine whether Payne was treated by a specialist but assumed that Payne had followed her instructions.

On October 21, 1991, and November 8, 1991, Payne sought treatment from Dr. Rothman, a gynecologist. Dr. Rothman recorded Payne's history that, for a period of one and one-half years, she had suffered from an inflamed and bleeding left nipple. Dr. Rothman prescribed oral antibiotics and a topical steroid cream to treat the condition. Payne expressed relief to Dr. Rothman, stating that she was afraid she had cancer. Dr. Rothman reassured her that she was only suffering from eczema.

Payne made several additional visits to both York and Dr. Rothman. She was treated by York on January 29, February 27, and March 12, 1992. Payne's medical records for January 1992 indicate that she was concerned about "sores that have been slow to heal." York testified that she could not recall whether she had discussed with Payne any problems about Payne's breast after the July 1991 visit.

Payne's medical records do not indicate that York and Dr.

Jenkins made any other examination of Payne's breast or that they pursued the question of her need to see a specialist. Further, York testified that she was unaware until September 1992 that Dr. Rothman had examined Payne.

Dr. Rothman treated Payne for a urinary tract infection on April 2, 1992. At that visit, Dr. Rothman did not examine Payne's breast, nor did he question her about whether the scabbing and discharge were still occurring.

On September 23, 1992, York examined Payne and discovered the presence of multiple masses in Payne's breast. In December 1992, Payne began receiving treatment from Dr. Morton C. Wilhelm, a surgical oncologist. He determined that the cancer had spread to her lymph nodes and was particularly aggressive, rendering her prognosis poor and the terminal nature of the cancer certain.

Dr. Wilhelm testified that Payne died as the result of misdiagnosed breast cancer. He stated that Payne would have had a ten-year survival probability of nearly 90% if her cancer had been diagnosed when it was still non-invasive. Dr. James P. Neifeld, a surgical oncologist, stated that Payne's cancer became invasive three to six months prior to her December 1992 diagnosis.

Dr. Alan Mackintosh, an expert in the field of primary care medicine, testified that the standard of care for treatment of the breast is the same for a family practice physician as for a gynecologist. Dr. Mackintosh and Dr. Neifeld both testified

that, beginning in January 1991, York and Dr. Jenkins breached the standard of care by failing to recognize symptoms of breast cancer, by over-emphasizing the possibility of infection rather than cancer, by failing to refer Payne to a surgeon for a biopsy, and by failing to determine whether the surgeon had diagnosed the breast abnormality. They testified that Dr. Jenkins and York breached this standard of care on Payne's 1991 visits, as well as on her January, February, and March 1992 visits.

Yvonne G. Newberry, an expert on the standard of care for family nurse practitioners, testified that, given Payne's history of breast problems, York should have performed a breast examination and discussed the possibility of cancer with Payne during the January, February, and March 1992 office visits. Newberry testified that York had an obligation to ask Payne about the progress of the breast treatment even when Payne did not specifically complain about it.

Dr. Jenkins testified that he was responsible for the care of all patients treated by York, and that he had daily discussions with York regarding her treatment of any seriously ill patients. Dr. Jenkins stated that he was familiar with Paget's Disease and was aware that a biopsy is the only method for differentiating this disease from a benign problem. He further testified that, in January 1992, he recognized that there was a chance that Payne had undiagnosed breast cancer. However, he did not inform either York or Payne of the possibility of

- 6 -

cancer at this time.

Dr. Jenkins further testified that, when he suspected that a patient may have breast cancer, he would refer the patient to a specialist and send a letter of referral containing all information he had on the patient's condition. However, the record does not show that Dr. Jenkins sent such a letter on Payne's behalf prior to the discovery of masses in her breast in September 1992.

Dr. Jenkins and York offered evidence that they met the standard of care in their treatment of Payne. Margaret Light, a nurse practitioner, testified that York met the standard of care in ordering a mammogram, in suggesting a conservative plan of treatment with antibiotics, and in instructing Payne on what action she should take if her symptoms did not improve.

Dr. Alfred Muller, an expert in primary care medicine, testified that York and Dr. Jenkins met the standard of care by treating Payne to the best of their ability and by referring her to a dermatologist for additional care. Dr. Muller stated that Payne then bore the responsibility to follow their advice and to consult a specialist.

The jury returned a verdict for the plaintiff, awarding $1.1 million in damages against the defendants. On the defendants' motion, the trial court amended the verdict to $1 million, pursuant to Code § 8.01-581.15, and then reduced that amount by $450,000 based on the settlement with Dr. Rothman.

On appeal, the defendants argue that the trial court erred in granting the motion in limine, because there was evidence that Dr. Rothman was the sole proximate cause of Payne's death.  In support of their argument, the defendants primarily rely on the testimony of Dr. Neifeld and Dr. Wilhelm.

As stated above, Dr. Neifeld testified that Payne's breast cancer became invasive and spread to her lymph nodes between three and six months before her diagnosis in December 1992.  Dr. Wilhelm stated that lymph node involvement is "the most significant prognostic factor we have as far as breast cancer is concerned.  It indicates the patient's chances of survival are markedly diminished."  The defendants argue that this evidence would support a finding that Dr. Rothman was the sole proximate cause of the misdiagnosis, because Dr. Rothman was the last health care provider to see Payne before June 1992, when she still had an opportunity for survival.

The plaintiff responds that the trial court properly granted the motion in limine because there was no evidence that Dr. Rothman's conduct was the sole proximate cause of Payne's death.  The plaintiff asserts that, as a matter of law, Dr. Rothman's treatment of Payne could not be a superseding cause of Payne's death because Dr. Rothman's treatment was rendered during the period that Dr. Jenkins and York also were treating Payne.  We agree with the plaintiff.

In examining this issue, we first consider the relevant

principles governing the issue of proximate causation. Issues of negligence and proximate causation ordinarily are questions of fact for the jury's determination. Brown v. Koulizakis, 229 Va. 524, 531, 331 S.E.2d 440, 445 (1985). A court decides these issues only when reasonable persons could not differ. Hadeed v. Medic-24, Ltd., 237 Va. 277, 285, 377 S.E.2d 589, 593 (1989).

"The proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." Beale v. Jones, 210 Va. 519, 522, 171 S.E.2d 851, 853 (1970). There may be more than one proximate cause of an event. Panousos v. Allen, 245 Va. 60, 65, 425 S.E.2d 496, 499 (1993).

In order to relieve a defendant of liability for his negligent act, the negligence intervening between the defendant's negligent act and the injury must so entirely supersede the operation of the defendant's negligence that it alone, without any contributing negligence by the defendant in the slightest degree, causes the injury. Id.; Coleman v. Blankenship Oil Corp., 221 Va. 124, 131, 267 S.E.2d 143, 147 (1980); City of Richmond v. Gay, 103 Va. 320, 324, 49 S.E. 482, 483 (1905). Thus, a superseding cause of an injury "constitutes a new effective cause and operates independently of any other act, making it and it only the proximate cause of injury." Maroulis v. Elliott, 207 Va. 503, 511, 151 S.E.2d 339, 345 (1966).

- 9 -

In the present case, the defendants continued to treat Payne during the entire period that she received treatment from Dr. Rothman. In addition, they were unaware of Dr. Rothman's treatment until September 1992, when the cancer already had become invasive. Thus, there is no evidence that the defendants relied on Dr. Rothman's treatment in their own care of Payne.

Moreover, the defendants and Dr. Rothman were subject to the same standard of care and they all failed to diagnose the cancer before Payne's condition became terminal. Therefore, reasonable persons could not conclude from the evidence that Dr. Rothman's negligence <u>alone</u>, without any contributing negligence by the defendants in the slightest degree, caused Payne's death. <u>See</u> <u>Panousos</u>, 245 Va. at 65, 425 S.E.2d at 499.[2]

Since there was no evidence from which the jury could conclude that Dr. Rothman was the sole proximate cause of Payne's death, the rejected opinion evidence was irrelevant to the issue

_____

[2]The defendants' reliance on <u>Barrios v. Darrach</u>, 629 So.2d 211 (Fla. App. 1993), is misplaced. In <u>Barrios</u>, a case involving injury resulting from a post-operative infection, the plaintiff had ceased treatment with the first physician defendant and thereafter had received treatment only from the second physician defendant. <u>Id.</u> at 212. In addition, the case involved a "single injury of disputed causation." <u>Id.</u> at 213. Thus, <u>Barrios</u> is factually dissimilar and inapposite.

whether the defendants also were negligent in their treatment of Payne. Id. Further, since the defendants produced no evidence tending to prove the facts on which their theory of sole proximate causation rested, they were not entitled to place that issue before the jury and have the jury instructed on it. See Van Buren v. Simmons, 235 Va. 46, 51, 365 S.E.2d 746, 749 (1988).

We also find no merit in the defendants' argument that, since Dr. Rothman is a gynecologist and the defendants are family practitioners, the jury could have relied on this fact to find that Dr. Rothman was the sole proximate cause of Payne's death. As stated above, the evidence before the trial court was undisputed that the same standard of care for treatment of the breast applies to a family practice physician and to a gynecologist. Therefore, both Dr. Rothman and the defendants had the same duty of care to Payne and their negligence cannot be distinguished on this basis.

Finally, the defendants argue that the court's mid-trial ruling prejudiced the defendants by preventing them from "following through on promises made to the jury in their opening statement." We disagree. In initially denying the motion in limine before trial, the court stated that it was not able to rule on this issue based solely on the facts proffered by counsel. This preliminary ruling put the defendants on notice that the evidence in question might be excluded at a later time. Thus, when the defendants elected to refer to the challenged

- 11 -

evidence in their opening statement, they did so at their own risk.

For these reasons, we will affirm the trial court's judgment.

Affirmed.

JUSTICE COMPTON, with whom CHIEF JUSTICE CARRICO and JUSTICE STEPHENSON join, dissenting.

"The principle of tort litigation that issues of negligence and proximate cause ordinarily are questions of fact for the jury applies with no less force to medical malpractice cases."  Brown v. Koulizakis, 229 Va. 524, 531, 331 S.E.2d 440, 445 (1985).

In the context of proximate cause, and the subject of intervening and superseding negligence, there is usually a succession of events that are more or less dependent upon those preceding.  It is the province of a jury to examine this succession of events and to ascertain whether those events or facts are "naturally and probably connected with each other in a continuous sequence, or whether they are broken apart by new and independent forces."  Koutsounadis v. England, 238 Va. 128, 132, 380 S.E.2d 644, 647 (1989).  Accord Scott v. Simms, 188 Va. 808, 819, 51 S.E.2d 250, 254 (1949).

In the present case, the defendants should have been permitted to present to the jury their evidence demonstrating that Dr. Rothman's negligent conduct was the sole proximate cause of the decedent's death.  Based on this record, the jury properly could have concluded that Rothman was negligent in failing to

diagnose the decedent's breast cancer on October 21 and November 8, 1991, and again on April 2, 1992. Further, the jury could have concluded that the decedent's last opportunity for survival from the cancer was before June 1992. The last health care provider to see her before that date was Dr. Rothman, who saw her on April 2, 1992. If the jury believed that the decedent was curable in October or November 1991, then Dr. Rothman's negligence in missing the breast cancer diagnosis at that time became the sole proximate cause of the decedent's death. Moreover, if the jury believed the trial testimony that the decedent was still curable three to six months prior to her cancer diagnosis in December 1992, then the negligence of Dr. Rothman, as the relevant treating physician during that June–September period after the April 2, 1992 visit, was the sole proximate cause of the decedent's death.

Thus, I believe the trial court erred in ruling that the defendants could not present evidence, or comment upon, Dr. Rothman's medical negligence as the sole proximate cause of the decedent's death. In other words, the trial court improperly refused to permit the jury to consider whether Dr. Rothman's negligence intervened between the defendants' negligent acts and the death so as to supersede the operation of defendants' fault.

I would reverse the judgment below, remand the matter for a new trial, and allow the defendants to present evidence in support of their theory of the case.