Present:   All the Justices

WALTER ATKINSON, ADMINISTRATOR OF THE
 ESTATE OF RUBY E. ATKINSON, DECEASED
                        OPINION BY JUSTICE LEROY R. HASSELL, SR.
v.  Record No. 972694              November 6, 1998

DANIEL W. SCHEER, D.O.

           FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                     James B. Wilkinson, Judge

     In this appeal of a judgment in a medical negligence

action, we consider whether the defendant was entitled to

present evidence that another doctor, who is not a party to

this litigation, breached the standard of care owed to a

patient.

     Walter Atkinson, administrator of the estate of Ruby E.

Atkinson (Atkinson), filed a motion for judgment against

Daniel W. Scheer, a doctor of osteopathic medicine.  The

estate alleged that Dr. Scheer breached the standard of care

owed to Atkinson and that her death was caused by Dr. Scheer's

negligence.  Dr. Scheer filed a grounds of defense and denied

any acts of negligence.

     During a jury trial, Dr. Scheer was permitted to ask the

plaintiff's expert witness, over the plaintiff's objection,

whether another physician who had also treated Atkinson had

committed acts of negligence.  The trial court permitted Dr.

Scheer to elicit such testimony, and at the conclusion of the

trial, the jury returned a verdict in favor of Dr. Scheer. The plaintiff appeals.

We will state the facts and all reasonable inferences therefrom in favor of Dr. Scheer, the recipient of a jury verdict confirmed by the trial court. Atkinson began to experience symptoms of a heart attack around 5:00 p.m. on September 12, 1994. She had pain and nausea, and she vomited. She arrived at Richmond Memorial Hospital's emergency room at 6:50 p.m., and she complained of pain in her chest, neck, and left shoulder.

An emergency room nurse placed Atkinson on oxygen, extracted a blood sample from her, and connected her to a continuous heart monitor. The nurse gave Atkinson certain fluids intravenously and attached her to an electrocardiograph. Dr. Scheer examined Atkinson around 7:15 p.m., performed a physical evaluation, and ordered certain diagnostic tests.

Dr. Scheer testified that even though he did not make a final diagnosis of Atkinson on September 12, he made a working diagnosis that "her etiology was probably cardiac in origin, probably cardiac ischemia." Dr. Scheer stated that a working diagnosis is "the one most likely to be what was going on with the person." Dr. Scheer described an ischemia as "a lack of oxygen going to the heart."

Subsequently, Dr. Scheer ordered that a patch of nitroglycerin paste be placed on Atkinson's chest to be absorbed through her skin into her body.  The nitroglycerin paste dilated her blood vessels, thereby reducing the strain on her heart which, in turn, decreased her heart's need for oxygen.  According to Dr. Scheer, after the nitroglycerin paste was administered, Atkinson's pain abated.  Atkinson's daughter, however, testified that her mother continued to experience pain.

Dr. Scheer ordered a blood test to ascertain the presence of enzymes in Atkinson's body which would have been indicative of heart damage.  Dr. Scheer had not received the results of the blood test when his emergency room shift ended at 10:00 p.m.

Dr. Scheer also contacted Dr. Selwyn Goodwin by telephone.  Dr. Goodwin was a physician who was "on call" for Atkinson's regular treating physician.  Dr. Goodwin was aware of Atkinson's past history of pulmonary embolism, a condition which could also cause chest pain.  Dr. Goodwin suggested to Dr. Scheer that he order a ventilation protrusion scan which would detect the presence of this condition.  This scan is commonly referred to as a VQ scan.  The scan was performed, but the results were not available when Dr. Scheer's shift ended.

When Dr. Scheer left the emergency room at about 10:00 p.m., Dr. Gayle Wampler-Adams, another emergency room physician, began treatment of Atkinson. Dr. Wampler-Adams testified that it was her "recollection . . . that [Atkinson] had been cleared for discharge, that we were awaiting VQ scan results as a final diagnostic test."

Dr. Wampler-Adams received the results of the VQ scan, which were negative. Dr. Wampler-Adams spoke with Atkinson, performed a physical examination, and reviewed the EKG and laboratory results available to her. Dr. Wampler-Adams noted in the emergency room record that her diagnosis of Atkinson's condition was "[a]typical chest pain, probable GE Reflux." Dr. Wampler-Adams also spoke by telephone with Dr. Goodwin. Dr. Wampler-Adams discharged Atkinson at 11:40 p.m. that night.

Dr. Wampler-Adams testified, without contradiction, that she relied upon Dr. Scheer's "workup" of Atkinson when making the decision to discharge Atkinson. Shortly after her discharge, Atkinson began to experience symptoms associated with a heart attack. She began to vomit, and she complained of pain in her shoulder "down through her arm." Her regular physician diagnosed her condition the next day as "a heart attack in progress," and she was admitted to Richmond Memorial

Hospital.  She died on October 4, 1994, as a result of her heart attack.

Dr. Scheer did not present any expert witnesses at trial. His expert witnesses were disqualified from testifying in a pretrial order.

Dr. David Munter, who qualified as an expert witness on behalf of the plaintiff on the subject of "emergency room care medicine," testified within a reasonable degree of medical certainty that Dr. Scheer breached the standard of care owed to Atkinson.  Specifically, Dr. Munter testified that Dr. Scheer had enough information to admit Atkinson as a patient to the hospital and that he breached the standard of care in failing to do so.  Dr. Munter also opined that Dr. Scheer should have been more aggressive in his treatment of Atkinson and that Atkinson would have "had a very high probability of surviving had she been admitted" to the hospital on the evening she was treated in the emergency room and that her "high likelihood of survivability was lost."

During Dr. Scheer's cross-examination of Dr. Munter, the trial court permitted him to ask, over the plaintiff's objection, whether Dr. Wampler-Adams, who had settled the estate's claims against her, breached the standard of care owed to Atkinson.  Dr. Munter testified that Dr. Wampler-Adams had breached the standard of care by discharging Atkinson.

5

Atkinson, relying upon Jenkins v. Payne, 251 Va. 122, 465 S.E.2d 795 (1996), argues that the trial court erred by permitting Dr. Scheer to introduce evidence at trial that Dr. Wampler-Adams was negligent in her care and treatment of Atkinson. Dr. Scheer responds that the trial court properly admitted this testimony in evidence because Dr. Wampler-Adams' conduct was negligent and such conduct was a superseding intervening cause of Atkinson's injury. We disagree with Dr. Scheer.

In Jenkins, we considered "whether the trial court erred in excluding from the jury's consideration (1) opinion evidence that another physician, who had settled the plaintiff's claim against him, was negligent in his treatment of the decedent, and (2) the defendants' argument that the settling physician was the sole proximate cause of the decedent's death." Jenkins, 251 Va. at 124, 465 S.E.2d at 796.

Veronica L. Payne filed a motion for judgment against Harold S. Jenkins, M.D., Jill W. York, R.N., P.N.P., Barry S. Rothman, M.D., and Doctors Rothman, Grapin, and McKnight, P.C. Payne alleged that these health care providers breached the applicable standards of care owed to her. Payne died before trial, and her husband, Troy R. Payne, the personal representative of her estate, was substituted as plaintiff,

6

and the motion for judgment was amended to allege a cause of action for wrongful death.

Veronica Payne had Paget's Disease, which is a cancer of the nipple and milk ducts.  While this cancer remains non-invasive, it grows slowly and is highly curable.  There is about a 90% survival rate for patients with Paget's Disease who receive treatment before the cancer becomes invasive.

Veronica Payne first sought treatment for her breast abnormalities when she was examined by York, a nurse practitioner working under the supervision of Dr. Jenkins.  She was seen and treated twice by York, who referred her to a dermatologist.  Subsequently, Payne sought treatment from Dr. Rothman, a gynecologist, who prescribed oral antibiotics and a topical steroid to treat problems she was having with her breast.  Id. at 125-26, 465 S.E.2d at 797.

Payne made several additional visits to both York and Dr. Rothman because she was concerned about sores on her breast which had not healed properly.  Subsequently, York examined Payne and discovered the presence of multiple masses in her breast, and Payne was referred to a surgical oncologist, who determined that she had aggressive cancer which had spread to her lymph nodes.  An expert witness testified at trial that Payne's death was the result of a misdiagnosed breast cancer and that she would have had a 10-year survival probability of

7

about 90% had her cancer been diagnosed when it was still non-invasive.

Before trial, the personal representative of Payne's estate settled his claim against Dr. Rothman and his professional corporation. The plaintiff made a motion in limine requesting that the trial court exclude any opinion evidence that Dr. Rothman was negligent in his treatment of Veronica Payne. The defendants objected, asserting that their defense would be based on a theory that Dr. Rothman's negligence was the sole proximate cause of Veronica Payne's death. The trial court ultimately granted the motion, ruling that Dr. Rothman's conduct was "at the very best . . . concurrent negligence as opposed to [superseding negligence]." Id. at 124, 465 S.E.2d at 796.

On appeal, the defendants in Jenkins argued that the trial court erred in refusing to permit them to present testimony that Dr. Rothman breached the standard of care owed to Payne because there was evidence that Dr. Rothman was the sole proximate cause of Veronica Payne's death. Rejecting their contentions, we stated the following principles which are equally pertinent here.

> "Issues of negligence and proximate causation ordinarily are questions of fact for the jury's determination. Brown v. Koulizakis, 229 Va. 524, 531, 331 S.E.2d 440, 445 (1985). A court decides these issues only when reasonable persons could not

8

differ.  Hadeed v. Medic-24, Ltd., 237 Va. 277, 285,
377 S.E.2d 589, 593 (1989).

"'The proximate cause of an event is that act
or omission which, in natural and continuing
sequence, unbroken by an efficient intervening
cause, produces the event, and without which that
event would not have occurred.' Beale v. Jones, 210
Va. 519, 522, 171 S.E.2d 851, 853 (1970).  There may
be more than one proximate cause of an event.
Panousos v. Allen, 245 Va. 60, 65, 425 S.E.2d 496,
499 (1993).

"In order to relieve a defendant of liability
for his negligent act, the negligence intervening
between the defendant's negligent act and the injury
must so entirely supersede the operation of the
defendant's negligence that it alone, without any
contributing negligence by the defendant in the
slightest degree, causes the injury.  Id.; Coleman
v. Blankenship Oil Corp., 221 Va. 124, 131, 267
S.E.2d 143, 147 (1980); City of Richmond v. Gay, 103
Va. 320, 324, 49 S.E. 482, 483 (1905).  Thus, a
superseding cause of an injury 'constitutes a new
effective cause and operates independently of any
other act, making it and it only the proximate cause
of injury.' Maroulis v. Elliott, 207 Va. 503, 511,
151 S.E.2d 339, 345 (1966)."  (Emphasis added).
Jenkins, 251 Va. at 128-29, 465 S.E.2d at 799.

We applied these principles in Jenkins, and we held that

reasonable persons could not conclude from the evidence that

Dr. Rothman's negligence alone, without any contributing

negligence by the defendants in the slightest degree, caused

Payne's death.

We also note that we stated in Richmond v. Gay, 103 Va.

320, 324, 49 S.E. 482, 483 (1905):

"To be a superseding cause, whether intelligent or
not, it must so entirely supersede the operation of
the defendant's negligence, that it alone, without

9

the defendant's contributing negligence thereto in the slightest degree, produces the injury." Accord Panousos v. Allen, 245 Va. 60, 64-65, 425 S.E.2d 486, 499 (1993); Philip Morris, Inc. v. Emerson, 235 Va. 380, 397, 368 S.E.2d 268, 277 (1988); Cox v. Mabe, 214 Va. 705, 708, 204 S.E.2d 253, 256 (1974); Savage Truck Line v. Traylor, 193 Va. 579, 585-86, 69 S.E.2d 478, 482 (1952); Jefferson Hospital, Inc. v. Van Lear, 186 Va. 74, 81, 41 S.E.2d 441, 444 (1947).

Applying the principles that we enunciated in Jenkins and Gay, we hold, as a matter of law, that Dr. Wampler-Adams' conduct was not a superseding intervening cause of Atkinson's injury and, thus, the trial court erred by permitting Dr. Scheer to elicit testimony of Dr. Wampler-Adams' negligence. Dr. Scheer sought to relieve himself of liability for his purported negligent acts because of a claimed superseding intervening cause. Therefore, he was required to prove that Dr. Wampler-Adams' failure to admit Atkinson to the hospital entirely superseded the operation of Dr. Scheer's own alleged negligence so that Dr. Wampler-Adams' negligence alone, without any contributing negligence, even in the slightest degree by Dr. Scheer, caused Atkinson's injuries. Dr. Scheer failed to meet this burden.

The uncontradicted evidence of record demonstrates that Dr. Scheer's alleged negligence contributed at least "in the slightest degree" to Atkinson's death because Dr. Wampler-Adams testified without contradiction that she relied upon Dr.

10

Scheer's "workup" when she made the decision to discharge Atkinson. Even though Dr. Wampler-Adams, just as Dr. Rothman in Jenkins, had the last opportunity to take acts which would have substantially increased the patient's probability of survival, Dr. Wampler-Adams' failure to act did not entirely sever the chain of proximate causation set in motion by Dr. Scheer's alleged negligence.

Finding no merit in Dr. Scheer's remaining arguments, we will reverse the judgment of the trial court and remand this case for a new trial.

Reversed and remanded.


JUSTICE KOONTZ, with whom JUSTICE COMPTON and JUSTICE LACY join, dissenting.

I respectfully dissent.

The parties agree on appeal, as they did at trial, that the broad issue to be resolved is whether our decision in Payne v. Jenkins, 251 Va. 122, 465 S.E.2d 795 (1996), is controlling in the factual context of the present case. The specific issue presented is whether it can be properly determined as a matter of law that the conduct of Dr. Wampler-Adams was not a superseding intervening cause or the sole proximate cause of Ruby Atkinson's death, or whether that conduct created an issue of fact with regard to causation to be determined by the jury. I dissent because the majority

11

resolves that issue as a matter of law and, although inadvertently, effectively invades the province of the jury.

As we initially noted in Jenkins, ordinarily issues of negligence and proximate causation are questions of fact for the jury's determination and only become questions of law when reasonable persons could not differ. "In order to relieve a defendant of liability for his negligent act, the negligence intervening between the defendant's negligent act and the injury must so entirely supersede the operation of the defendant's negligence that it alone, without any contributing negligence by the defendant in the slightest degree, causes the injury." Jenkins, 251 Va. at 129, 465 S.E.2d at 799.

Guided by these well established principles, we held in Jenkins that two medical practitioners were not entitled to present opinion evidence that the negligence of a third defendant, against whom claims had been nonsuited following settlement of the claims against him, was the sole proximate cause of the patient's death. In that case, the evidence showed that all of the defendants concurrently treated the patient and were subject to the same standard of care of the patient. Therefore, the evidence would not support a finding that only the nonsuited defendant's negligence contributed to the patient's death. Id. Accordingly, we agreed with the trial court that while evidence establishing the facts

12

surrounding the treatment of the patient by the nonsuited defendant was admissible, id. at 124 n.1, 465 S.E.2d 796 n.1, expert opinion as to whether he had breached the standard of care in his treatment of the patient was irrelevant to the issue of whether the defendants also were negligent in their treatment of the patient.

I begin my analysis by noting the obvious distinction between the factual context in which the causation issue arises in the present case and that existing in Jenkins. Unlike Jenkins, the present case does not involve concurrent medical treatment of a mutual patient. Here, Dr. Scheer and Dr. Wampler-Adams, while subject to the same standard of care in their treatment of Atkinson, did not concurrently treat her. Rather, Dr. Munter's testimony established that, consistent with the standard of care for patients in the emergency room, Scheer's treatment of Atkinson terminated at the end of Scheer's shift in the emergency room, and Atkinson thereafter became solely the patient of Wampler-Adams.

This factual distinction is significant. This is particularly so in light of plaintiff's theory of liability and additional undisputed facts in this case. The thrust of plaintiff's theory of liability is that Dr. Scheer was negligent in failing to diagnose Atkinson's cardiac condition and, moreover, in failing to promptly admit her to the

hospital for appropriate intensive cardiac care treatment. Indeed, plaintiff called Dr. Munter, as an expert witness, in support of that theory of liability. Dr. Munter, as noted by the majority, opined that Dr. Scheer was negligent in not admitting Atkinson to the hospital and that her very high probability of survivability was lost because she was not admitted to the hospital on the evening she was treated in the emergency room.

However, Dr. Munter did not testify that this probability of survivability was lost solely as a result of Dr. Scheer's failure to admit Atkinson to the hospital. At that point in the succession of events to which Dr. Munter's testimony related, it is undisputed that when Dr. Scheer terminated his treatment of her, Atkinson remained in the emergency room. In addition, it is undisputed that Atkinson's condition was then stable. Plaintiff's other expert witness, Dr. Archer Baskerville, a board certified cardiologist, testified that Atkinson had suffered an "incomplete heart attack" before arriving at the emergency room and that the application of nitroglycerin stopped the heart attack for the period during which it was applied. Finally, it is also undisputed that Dr. Wampler-Adams did not admit Atkinson to the hospital, but, rather, after reviewing Dr. Scheer's notes on Atkinson's chart and the results of prior tests, conducting a physical

14

examination, and receiving the negative results from the VQ scan, she discharged Atkinson with what proved to be an erroneous diagnosis of "[a]typical chest pain, probable GE Reflux."

On cross-examination, Dr. Munter conceded that it was not a breach of the standard of care for Dr. Scheer to turn the treatment of Atkinson over to Dr. Wampler-Adams at the end of his shift, but "it should never have reached that point." As Dr. Scheer's counsel proceeded to question Dr. Munter about Dr. Wampler-Adams' treatment of Atkinson, plaintiff objected, asserting that "[t]he case is not about Dr. Adams." Dr. Scheer contended that he was attempting to show a superseding cause arising from the negligence of Dr. Wampler-Adams. Plaintiff renewed the motion in limine and the trial court replied, "I think that's relevant," and noted plaintiff's objection. Dr. Munter then testified that Dr. Wampler-Adams had a duty to conduct her own examination and evaluation of the patient and that, based on the information available, Dr. Wampler-Adams or "anybody associated with this case in the emergency department should have admitted" Atkinson.

It is then in this factual context, in contrast to that in Jenkins, that the majority holds, as a matter of law, that Dr. Wampler-Adams' conduct was not a superseding intervening cause of Atkinson's death and, thus, that the trial court

15

erred by permitting Dr. Scheer to elicit testimony of Dr. Wampler-Adams' negligence. The majority correctly notes that Dr. Scheer had the burden to prove that Dr. Wampler-Adams' failure to admit Atkinson to the hospital entirely superseded the operation of Dr. Scheer's own alleged negligence so that Dr. Wampler-Adams' negligence alone, without any contributing negligence, even in the slightest degree, by Dr. Scheer, caused Atkinson's death. However, the majority then finds, as a matter of law, that Dr. Scheer failed to meet this burden because Dr. Wampler-Adams testified without contradiction that she relied upon Dr. Scheer's "workup" when she made the decision to discharge Atkinson. In addition, the majority reasons that even though Dr. Wampler-Adams had the last opportunity to take acts which would have substantially increased Atkinson's probability of survival, Dr. Wampler-Adams' failure to act did not entirely sever the chain of proximate causation set in motion by Dr. Scheer's alleged negligence.

The majority fails to consider the effect of the testimony of Dr. Baskerville that the application of nitroglycerin stopped Atkinson's heart attack for the period during which it was applied. This evidence establishes that, at the time Scheer terminated his treatment of Atkinson, she was in a stable condition and had not been discharged from the

16

emergency room and was available to be admitted to the cardiac unit of the hospital at that time by Dr. Wampler-Adams. These facts distinguish this case from Jenkins. Moreover, they create a jury issue on causation.

Dr. Wampler-Adams' reliance upon Dr. Scheer's "workup" may well explain in part her decision to discharge Atkinson. However, that reliance at best creates a factual issue whether Dr. Wampler-Adams' conduct was a superseding intervening cause or the sole proximate cause of Atkinson's death. This is so simply because, on the evidence presented, reasonable persons could have differed as to whether Dr. Wampler-Adams' conduct so entirely superseded the operation of Dr. Scheer's failure to admit Atkinson to the hospital, that it alone, without Dr. Scheer's alleged negligence contributing thereto in the slightest degree, caused Atkinson's subsequent death. Accordingly, since a factual issue was presented in the context of this causation issue, Scheer was entitled to present expert opinion in support of his theory of non-liability.

For these reasons, I would affirm the judgment of the trial court.

17