JUSTICE KOONTZ, with whom JUSTICE COMPTON and JUSTICE LACY
join, dissenting.
I respectfully dissent.
The parties agree on appeal, as they did at trial, that the broad issue to be resolved is whether our decision in Payne v. Jenkins, 251 Va. 122, 465 S.E.2d 795 (1996), is controlling in the factual context of the present case. The specific issue presented is whether it can be *456 properly determined as a matter of law that the conduct of Dr. Wampler-Adams was not a superseding intervening cause or the sole proximate cause of Ruby Atkinson’s death, or whether that conduct created an issue of fact with regard to causation to be determined by the jury. I dissent because the majority resolves that issue as a matter of law and, although inadvertently, effectively invades the province of the jury.
As we initially noted in Jenkins, ordinarily issues of negligence and proximate causation are questions of fact for the jury’s determination and only become questions of law when reasonable persons could not differ. “In order to relieve a defendant of liability for his negligent act, the negligence intervening between the defendant’s negligent act and the injury must so entirely supersede the operation of the defendant’s negligence that it alone, without any contributing negligence by the defendant in the slightest degree, causes the injury.” Jenkins, 251 Va. at 129, 465 S.E.2d at 799.
Guided by these well established principles, we held in Jenkins that two medical practitioners were not entitled to present opinion evidence that the negligence of a third defendant, against whom claims had been nonsuited following settlement of the claims against him, was the sole proximate cause of the patient’s death. In that case, the evidence showed that all of the defendants concurrently treated the patient and were subject to the same standard of care of the patient. Therefore, the evidence would not support a finding that only the nonsuited defendant’s negligence contributed to the patient’s death. Id. Accordingly, we agreed with the trial court that while evidence establishing the facts surrounding the treatment of the patient by the nonsuited defendant was admissible, id. at 124 n.1, 465 S.E.2d 796 n.1, expert opinion as to whether he had breached the standard of care in his treatment of the patient was irrelevant to the issue of whether the defendants also were negligent in their treatment of the patient.
I begin my analysis by noting the obvious distinction between the factual context in which the causation issue arises in the present case and that existing in Jenkins. Unlike Jenkins, the present case does not involve concurrent medical treatment of a mutual patient. Here, Dr. Scheer and Dr. Wampler-Adams, while subject to the same standard of care in their treatment of Atkinson, did not concurrently treat her. Rather, Dr. Munter’s testimony established that, consistent with the standard of care for patients in the emergency room, Scheer’s treatment of Atkinson terminated at the end of Scheer’s shift in the emer *457 gency room, and Atkinson thereafter became solely the patient of Wampler-Adams.
This factual distinction is significant. This is particularly so in light of plaintiff’s theory of liability and additional undisputed facts in this case. The thrust of plaintiff’s theory of liability is that Dr. Scheer was negligent in failing to diagnose Atkinson’s cardiac condition and, moreover, in failing to promptly admit her to the hospital for appropriate intensive cardiac care treatment. Indeed, plaintiff called Dr. Munter, as an expert witness, in support of that theory of liability. Dr. Munter, as noted by the majority, opined that Dr. Scheer was negligent in not admitting Atkinson to the hospital and that her very high probability of survivability was lost because she was not admitted to the hospital on the evening she was treated in the emergency room.
However, Dr. Munter did not testify that this probability of survivability was lost solely as a result of Dr. Scheer’s failure to admit Atkinson to the hospital. At that point in the succession of events to which Dr. Munter’s testimony related, it is undisputed that when Dr. Scheer terminated his treatment of her, Atkinson remained in the emergency room. In addition, it is undisputed that Atkinson’s condition was then stable. Plaintiff’s other expert witness, Dr. Archer Baskerville, a board certified cardiologist, testified that Atkinson had suffered an “incomplete heart attack” before arriving at the emergency room and that the application of nitroglycerin stopped the heart attack for the period during which it was applied. Finally, it is also undisputed that Dr. Wampler-Adams did not admit Atkinson to the hospital, but, rather, after reviewing Dr. Scheer’s notes on Atkinson’s chart and the results of prior tests, conducting a physical examination, and receiving the negative results from the VQ scan, she discharged Atkinson with what proved to be an erroneous diagnosis of “[ajtypical chest pain, probable GE Reflux.”
On cross-examination, Dr. Munter conceded that it was not a breach of the standard of care for Dr. Scheer to turn the treatment of Atkinson over to Dr. Wampler-Adams at the end of his shift, but “it should never have reached that point.” As Dr. Scheer’s counsel proceeded to question Dr. Munter about Dr. Wampler-Adams’ treatment of Atkinson, plaintiff objected, asserting that “[tjhe case is not about Dr. Adams.” Dr. Scheer contended that he was attempting to show a superseding cause arising from the negligence of Dr. WamplerAdams. Plaintiff renewed the motion in limine and the trial court replied, “I think that’s relevant,” and noted plaintiff’s objection. Dr. *458 Munter then testified that Dr. Wampler-Adams had a duty to conduct her own examination and evaluation of the patient and that, based on the information available, Dr. Wampler-Adams or “anybody associated with this case in the emergency department should have admitted” Atkinson.
It is then in this factual context, in contrast to that in Jenkins, that the majority holds, as a matter of law, that Dr. Wampler-Adams’ conduct was not a superseding intervening cause of Atkinson’s death and, thus, that the trial court erred by permitting Dr. Scheer to elicit testimony of Dr. Wampler-Adams’ negligence. The majority correctly notes that Dr. Scheer had the burden to prove that Dr. WamplerAdams’ failure to admit Atkinson to the hospital entirely superseded the operation of Dr. Scheer’s own alleged negligence so that Dr. Wampler-Adams’ negligence alone, without any contributing negligence, even in the slightest degree, by Dr. Scheer, caused Atkinson’s death. However, the majority then finds, as a matter of law, that Dr. Scheer failed to meet this burden because Dr. Wampler-Adams testified without contradiction that she relied upon Dr. Scheer’s “workup” when she made the decision to discharge Atkinson. In addition, the majority reasons that even though Dr. Wampler-Adams had the last opportunity to take acts which would have substantially increased Atkinson’s probability of survival, Dr. Wampler-Adams’ failure to act did not entirely sever the chain of proximate causation set in motion by Dr. Scheer’s alleged negligence.
The majority fails to consider the effect of the testimony of Dr. Baskerville that the application of nitroglycerin stopped Atkinson’s heart attack for the period during which it was applied. This evidence establishes that, at the time Scheer terminated his treatment of Atkinson, she was in a stable condition and had not been discharged from the emergency room and was available to be admitted to the cardiac unit of the hospital at that time by Dr. Wampler-Adams. These facts distinguish this case from Jenkins. Moreover, they create a jury issue on causation.
Dr. Wampler-Adams’ reliance upon Dr. Scheer’s “workup” may well explain in part her decision to discharge Atkinson. However, that reliance at best creates a factual issue whether Dr. WamplerAdams’ conduct was a superseding intervening cause or the sole proximate cause of Atkinson’s death. This is so simply because, on the evidence presented, reasonable persons could have differed as to whether Dr. Wampler-Adams’ conduct so entirely superseded the operation of Dr. Scheer’s failure to admit Atkinson to the hospital, *459 that it alone, without Dr. Scheer’s alleged negligence contributing thereto in the slightest degree, caused Atkinson’s subsequent death. Accordingly, since a factual issue was presented in the context of this causation issue, Scheer was entitled to present expert opinion in support of his theory of non-liability.
For these reasons, I would affirm the judgment of the trial court.